DIANNE MAYNARD, RESPONDENT, v. BOARD OF TRUSTEES
OF THE TEACHERS' PENSION AND ANNUITY
FUND, APPELLANT.

Argued November 30, 1987—Decided October 27, 1988.

*John J. Franzini,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General of New Jersey; *Michael R. Clancy,* Deputy Attorney General, of counsel; *Ellis I. Medoway,* Deputy Attorney General, on the brief).

*Richard A. Friedman* argued the cause for respondent (*Ruhlman, Butrym and Friedman,* attorneys).

The opinion of the Court was delivered by

POLLOCK, Justice.

In this case, we must determine whether a "slip-and-fall" injury to a public school teacher that results in permanent disability constitutes a "traumatic event" for the purposes of the Teachers' Pension and Annuity Fund–Social Security Integration Law, *N.J.S.A.* 18A:66–1 to –93 (TPAF). The TPAF Board (the Board) denied the application of claimant, Dianne Maynard, for accidental disability because her injury was not the direct result of a "traumatic event." In an unreported decision, the Appellate Division reversed, finding that the slip and fall was such an event. One judge dissented, and the Board appealed of right, *R.* 2:2–1(a)(2). We now reverse the judgment of the Appellate Division, and reinstate the decision of the Board.

I

On September 8, 1982, Maynard, a high school English teacher, reported to work and "signed in" at the main office, as required by the school board's policy. After signing in, she turned to proceed to her mailbox to pick up her homeroom student attendance cards. She slipped and fell on the highly polished floor, striking the back of the right side of her head on a bench and landing on her back on the floor. Maynard described the accident in her testimony:

As I turned to go to the mail box, my feet went out from underneath me and I fell.

    *     *     *     *     *     *     *     *

As I fell, when I went down, I twisted one ankle. I don't know which one it was now, but there was a long bench, like a church pew that they use for people to sit to wait for conferences and the bench was behind me.

As I fell and went down, the back of the right side of my head hit the bench * * *.

The school nurse helped Maynard into a wheelchair and took her to the nurse's office, where she remained until her nephew took her home. As a result of the accident, Maynard, from whom a benign brain tumor had been removed in the preceding year, suffered aphasia, which is defined as the "[a]bsence or impairment of the ability to communicate through speech, writing, or signs, due to dysfunction of brain centers," *Taber's Cyclopedic Medical Dictionary* 116 (15th ed. 1985), and petit mal seizures. Although she returned to active employment in October 1982, she missed an additional eleven days of work during the 1982-83 school year, and twenty-eight days during the 1983-84 school year.

Finding that Maynard was totally and permanently disabled, the Board denied her application for accidental disability retirement benefits but granted her ordinary disability benefits. *See N.J.S.A.* 18A:66-39(b). On Maynard's administrative appeal, an administrative law judge (ALJ) recommended affirmance of the Board's denial of accidental disability benefits. The ALJ found that Maynard's slip and fall was a traumatic event, but that it did not occur during and as a result of her regular duties. *N.J.S.A.* 18A:66-39(c). Consequently, the ALJ recommended denial of accidental disability benefits. The Board adopted the ALJ's decision, but modified it by concluding that the slip and fall was not a traumatic event.

The Appellate Division reversed the Board, concluding both that Maynard's slip and fall constituted a traumatic event and that it occurred during and as a result of her usual duties. Judge Muir dissented from that part of the opinion that held that a slip and fall on a freshly waxed floor is a traumatic event.

## II

The present case is controlled by our unanimous decision three years ago in *Kane v. Board of Trustees, Police & Firemen's Retirement System*, 100 *N.J.* 651 (1985), in which

we held that a policeman's slip and fall was not a "traumatic event" under *N.J.S.A.* 43:16A–7. Although *Kane* involved a claim for accidental benefits under the Police & Firemen's Retirement System (PFRS), *N.J.S.A.* 43:16A–1 to –68, and the present case arises under the TPAF, *N.J.S.A.* 18A:66–1 to –93, coverage under each statute depends on the interpretation of the phrase "traumatic event." Hence, the critical question is the meaning of that phrase in determining whether a disability is accidental or ordinary.

Our ultimate goal is ascertaining the intention of the Legislature in requiring that injuries be sustained in a "traumatic event" for an injured employee to be entitled to the higher benefits attributable to an accidental disability. To paraphrase Justice Holmes, on this point a page of legislative history is worth a volume of logic. *New York Trust Co. v. Eisner*, 256 *U.S.* 345, 349, 41 *S.Ct.* 506, 507, 65 *L.Ed.* 963, 983 (1921) ("Upon this point a page of history is worth a volume of logic."). The legislative history pertaining to accidental benefits makes clear that the inclusion of the word "traumatic event" was "intended to make the granting of an accidental disability pension more difficult." *Cattani v. Board of Trustees, Police & Firemen's Retirement Sys.*, 69 *N.J.* 578, 584 (1976). In *Cattani*, we reviewed the legislative history of accidental benefits, *id.* at 583–84 and a summary will suffice for present purposes.

Before 1964, both TPAF, *L.* 1955, *c.* 37, § 39, and PFRS, *L.* 1959, *c.* 158, at 628–29, § 1, permitted the award of accidental death benefits if an employee was injured in an "accident," a word that this Court interpreted as it was used under the Worker's Compensation Act. *Ciuba v. Irvington Varnish and Insulator Co.*, 27 *N.J.* 127 (1958); *Fattore v. Police & Firemen's Retirement Sys.*, 80 *N.J.Super.* 541 (App.Div.), *cert. denied*, 41 *N.J.* 245 (1963). So interpreted, the statute was satisfied only "if the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties." *Ciuba, supra*, 27 *N.J.* at 139 (quoting A. Larson, *Workmen's Compensation Law* §§ 38.10, 30.20,

38.30). The statute did not require an unexpected, external event or force.

Against this background, the Legislature amended both TPAF, *N.J.S.A.* 18A:66–39, and PFRS, *N.J.S.A.* 43:16A–7; *see Cattani, supra,* 69 *N.J.* at 584 by substituting the phrase "traumatic event" for "accident." For example, *N.J.S.A.* 18A:66–39 was amended to provide that an accidental disability retirement allowance would be provided "if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties," *L.*1966, *c.* 66, § 2, and to provide further that "[p]ermanent and total disability resulting from a cardiovascular, pulmonary or musculo-skeletal condition which was not a direct result of a traumatic event occurring in the performance of duty shall be deemed an ordinary disability." *Ibid.* Identical language amended the Public Employees' Retirement System statute, *N.J.S.A.* 43:15A–43.

Following those amendments, we decided *Cattani,* in which a fireman with a preexisting cardiovascular condition was denied an accidental disability pension when he suffered a basilar artery occlusion after excessively exerting himself in extinguishing a fire. In *Cattani,* we rejected a test proposed by the Appellate Division in *Hillman v. Board of Trustees, Public Retirement System,* 109 *N.J.Super.* 449, 460–61 (1970), that included as one part of a three-pronged test for a "traumatic event," that "the event was undesigned, unexpected and unusual." The *Cattani* Court rejected this third prong because it "is too broad and frustrates the restriction which the Legislature intended to place on the granting of an accidental disability pension when it substituted the expression 'traumatic event' for the word 'accident.'" 69 *N.J.* at 585.

In *Kane,* we ruled that the fireman in *Cattani* "was not entitled to an accidental disability pension because an excessive work event could not be considered a 'traumatic event.'" 100 *N.J.* at 661. *Kane* continued, by explaining that in *Cattani*

[W]e emphasized that "work effort alone, whether unusual or excessive, cannot be considered a traumatic event, even though it may have aggravated or accelerated * * * [a] preexisting disease." 69 *N.J.* at 586. We also stated: "The phrase 'traumatic event' would ordinarily involve a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force." *Id.*

We premised our decision in *Cattani* on the fact that in amending the statute in 1964, the legislature "intended to make the granting of an accidental disability pension more difficult." *Id.* at 584. We noted that

the words "traumatic event" were a significant departure from the term "accident" previously used, plainly indicating that the Legislature did not intend that the workmen's compensation concept of "accident" was to be applied to an accidental disability pension statute. [*Id.*]

*See also Russo v. Teachers' Pension and Annuity Fund,* 62 *N.J.* 142, 151 (1973) (tracing the history of a similar amendment to the teachers' pension and annuity fund-social security integration law, *N.J.S.A.* 18A:66–39). [*Ibid.* ]

The phrase "traumatic event" is not defined in either TPAF or PFRS and, as *Kane* recognized, the term has produced some confusion. *Id.* at 662–63. Hence, we further explained "traumatic event" by characterizing it "as one that arises in cases in which a worker involuntarily meets with a physical object or some other external matter and is a victim of a great rush of force or power that he himself did not bring into motion." *Id.* at 663. As *Cattani* makes clear, the focus of the inquiry is on the event itself, not the injury. 69 *N.J.* at 586. Consistent with that premise, "[t]he force or power must originate from sources other than the injured party." *Kane, supra,* 100 *N.J.* at 663. Consequently, we required that

to be eligible for accidental retirement allowance, a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power. [*Ibid.* ]

Applying that definition in *Kane,* which involved a series of cases, we found no traumatic event to Officer Kane, who became permanently disabled by twisting his ankle and knee as a result of stepping on an uneven piece of concrete, *id.* at 664, or to another police officer who was permanently disabled when he twisted his knee by stepping on a large stone in the headquarters parking lot, *ibid.*

Claimant satisfies the first two parts of the *Kane* test. The normal work effort of a school teacher does not involve slip-and-fall accidents, and such an accident, by its very nature, is not a voluntary occurrence. She does not, however, satisfy the third part because a slip-and-fall accident does not involve a great rush of force or uncontrollable power. Judge Muir correctly analyzed the present matter when he described claimant's incident:

> She turned, twisted her ankle and, as she fell, hit her head on the bench. * * * Here, the source of the force or power causing the injury came about as the result of petitioner's own conduct. Such a slip and fall, at ground level, is not comparable to a fall from the top step of a tall ladder and the attendant great force attributable to gravitational consequence.

Notwithstanding the clear legislative message, the Appellate Division in several unpublished decisions has reached conflicting results. The decisions that have found a slip-and-fall to be a traumatic event have sought to draw on an illustration in *Kane* that a fireman "who falls off the top step of a tall ladder," 100 *N.J.* at 663, has been injured in such an event. Those cases reason that the gravitational force of the fall is like the great rush of force required by *Kane.*

The analogy is misplaced. Whatever confusion was generated by the cited illustration should have been put to rest by the facts of the cases in *Kane,* in which two police officers slipped and fell, but were found not to be entitled to accidental disability benefits. The fact that the claimant in this case struck the ground and the officers did not is irrelevant. In slip-and-fall cases, no force or power originates anywhere except from the person falling. Any gravitational force that is generated by the fall is not "great," as that term was used in *Kane.* Although a fireman who falls from the top step of a tall ladder also falls as a result of his or her own conduct, the height of the ladder generates a gravitational force that, unlike that of someone who is standing on the ground, is "great."

The fact that claimant cannot recover accidental disability benefits does not prevent her from recovering workers' com-

pensation benefits and an ordinary disability pension. As Chief Justice Weintraub explained:

> The State has provided workmen's compensation benefits for public employees both at State and local levels, *N.J.S.A.* 34:15–43. Pension and annuity plans have another role. They provide retirement benefits after years of service, and although disability benefits are a rational part of such a program, there is no inherent compulsion to duplicate the coverage already provided by the workmen's compensation statute.
>
> [*Russo, supra,* 62 *N.J.* at 147.]

As in *Kane,* "we are constrained to conclude that this type of mishap is very much what the Legislature had in mind when it enacted the Workers' Compensation Act and when it provided for an ordinary rather than accidental disability pension." 100 *N.J.* at 664.

Our colleagues in their separate opinions in this case and the companion case, *Ciecwisz v. Board of Trustees, Police and Fireman's Retirement System,* 113 *N.J.* 180 (1988), propose two new tests for awarding accidental disability benefits. Justice O'Hern's dissent in the present matter focuses not on the event, but on the severity of the injury to justify the characterization of the event as "traumatic." Justice Stein's dissent in *Ciecwisz,* however, focuses "on the relationship between the event that precipitated the employee's fall, and the employee's normal work effort." 113 *N.J.* at 184. Thus, he would allow recovery in "those unusual instances in which the precipitating event does not involve a rush of great force but nevertheless possesses those qualities that undoubtedly prompted the Legislature to conclude that certain unexpected injuries out of the normal course of an employee's duties warrant the award of an accidental disability benefit." *Id.* at 192. This leads him to agree with us in this case, but disagree in *Ciecwisz. Ibid.* His reason is that the waxed floor on which Maynard fell is "the type of hazard a school teacher might expect to encounter on occasion while walking within the confines of a public school building." *Ibid.* The cooking oil on which Ciecwisz fell, however, is "sufficiently removed from the stresses and strains of

his ordinary duties to qualify as a traumatic event." *Ibid.* In effect, the right to recover accidental, as distinguished from ordinary, disability benefits would depend on whether "the event was undesigned, unexpected and unusual." *Id.* at 189 (quoting *Hillman, supra,* 109 *N.J.Super.* at 460–61). Thus, Justice Stein tries to resurrect that part of the *Hillman* test that we rejected in *Cattani. Id.* at 189. Whatever merit lies in Justice Stein's proposal, we believe it is not what the Legislature intended. Perhaps the Legislature should revisit this subject, but until it does, our duty is to apply the statute in accordance with the legislative intent.

One final word is in order. In ruling that the claimant's mishap was a traumatic event, the Appellate Division relied on *Gerba v. Board of Trustees of the Public Employees' Retirement System,* 83 *N.J.* 174 (1980), in which a municipal security guard slipped and fell on an oil spot and fell against a parked truck; and *Korelnia v. Board of Trustees of the Public Employees' Retirement System,* 83 *N.J.* 163 (1980), in which a municipal safety inspector slipped while loading fire extinguishers into a station wagon. Those cases, however, did not focus on the definition of traumatic event. The issue in both cases concerned medical causation and whether the injuries were the "direct result" of the event, *N.J.S.A.* 43:15A–43. With due respect to the Appellate Division, we believe it misread those cases. To the extent *Gerba* and *Korelnia* may be read as supporting the proposition that a slip and fall is a "traumatic event," we reject them.

Accordingly, we reverse the judgment of the Appellate Division and reinstate the decision of the Board.

STEIN, J., concurring.

I concur in the judgment of the Court. I disagree with its analysis for the reasons set forth in my dissenting opinion in

178

 

*Ciecwisz v. Board of Trustees, Police and Firemen's Retirement System,* 113 *N.J.* 180 (1988), also decided today.

O'HERN, J., dissenting.

I agree substantially with Justice Stein's analysis of the Court's precedent in this area set forth in his dissenting opinion in *Ciecwisz v. Board of Trustees, Police & Firemen's Retirement System,* 113 *N.J.* 180 (1988), also decided today. I disagree, however, with his making the rarity of the event an independent qualification for recovery. In focusing on Justice Sullivan's reference to "the event which results in a disabling injury," *Cattani v. Board of Trustees, Police & Firemen's Retirement Sys.,* 69 *N.J.* 578, 586 (1976), Justice Stein has turned Justice Sullivan's dual-causation inquiry into an independent disqualification. (Recall that in *Cattani* the "event" was superimposed on a pre-existing heart problem; Ms. Maynard had no such prior disability.) Thus in my view, a teacher who suffers the occasional mishap of a slip on a polished school floor but nonetheless receives the shattering impact of a violent blow to her body should not be disqualified from recovery.

To give a regrettably gruesome example to make the point, would we ever doubt that a public employee who slipped from a ground level position and was impaled on an iron post that fractured her spine had suffered a disability that resulted from a "traumatic event"?

In focusing on Justice Clifford's examples of a "great rush of force," *Kane v. Board of Trustees, Police & Firemen's Retirement Sys.,* 100 *N.J.* 651, 663 (1985), the majority has turned useful guides to the Legislature's intent into an artificially-created standard of ground-level disqualification. Unable to explain why this case is not covered by the illustration in that case—that the fireman who falls from a ladder may suffer a traumatic injury even though not exposed to force supplied by another—the Court answers that "the height of the ladder

generates a gravitational force that, unlike that of someone who is standing on the ground, is 'great.' " *Ante* at 175.

Although intimating that it adheres to the rule of *Kane*, the Court has in fact substituted a rule of gravity for traumatic injury—no recovery no matter how violent the force of the blow if you fell less than six feet. Aside from being bad physics, I doubt that the Legislature would intend such an *ad hoc* modification of its qualitative standard for accidental disability benefits.

Hence, I would hold that Dianne Maynard has met the statutory qualification for an accidental disability benefit. The "basic thrust" of the 1966 Amendments of the two pension systems was to focus on "a more stringent test of medical causation" predicated on a "traumatic event that constitutes the essential significant or the substantial contributing cause of the resultant disability." *Gerba v. Board of Trustees of the Public Employees' Retirement Sys.*, 83 *N.J.* 174, 186 (1980). The public employee met that test and the *Kane* test:

> [T]o be eligible for accidental disability retirement allowance, a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power. [*Kane, supra,* 100 *N.J.* at 663.]

I would therefore affirm the judgment of the Appellate Division.

Justice HANDLER joins in this dissent.

STEIN, J., concurring in the result.

*For reversal and reinstatement*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, GARIBALDI and STEIN—5.

*For affirmance*—Justices HANDLER and O'HERN—2.