667 A.2d 1052

DENNIS MAZZA, PETITIONER–APPELLANT v. BOARD OF
TRUSTEES, POLICE AND FIREMEN'S RETIREMENT
SYSTEM, RESPONDENT–RESPONDENT.

Argued September 26, 1995—Decided December 18, 1995.

*William I. Strasser* argued the cause for appellant (*Strasser & Associates,* attorneys; *Mr. Strasser* and *Robert J. Bavagnoli,* on the briefs).

*Richard L. Evert,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Josh Lichtblau,* Deputy Attorney General, on the brief).

PER CURIAM.

This appeal concerns the eligibility of an Essex County Park Police officer for retirement disability benefits. The disability arose when the officer's horse bucked and "reared up," causing the officer's body to twist in the saddle and suffer a disabling rupture of spinal discs. Officer Mazza's body went numb; he slumped over and lay on the saddle until his horse that "had ridden the trails for years ... brought [him] back to the barn." It is undisputed that Officer Mazza will receive at least ordinary disability benefits, which approximate 40 per cent of his average final compensation. At issue is his eligibility for additional compensation up to an approximate total of 66⅔ per cent of final compensation if the disability is determined to be "a direct result of a traumatic event occurring during and as a result of ... regular or assigned duties...." *N.J.S.A.* 43:15A–43.

Following the Report and Recommendation of an Administrative Law Judge (ALJ) empaneled to hear Mazza's appeal of an initial rejection of his claim for traumatic disability benefits, the Board of Trustees of the Police and Fireman's Retirement System reaffirmed its original decision. On Officer Mazza's appeal, two members of the Appellate Division voted to uphold the decision of the Board of Trustees. One member dissented, reasoning that the ALJ had created an artificial form of disqualification for "lifting

and twisting cases" and that in this case, although Officer Mazza was not thrown from the horse onto a hard surface, his encounter with the violent twisting force of this large horse, "approximately 16 hands high and probably weighing more than 1,000 pounds," met the definition of a traumatic event. In that judge's view, the rearing horse's bulk, which twisted the officer's waist and injured his back, clearly constituted a great rush of force or uncontrollable power, the encounter with which was completely unexpected by the officer. Officer Mazza appealed to us as of right under *Rule* 2:2–1.

We affirm the judgment of the Appellate Division. We need not retrace the doctrinal differences that have so recently marked our efforts to find a formula of words that will effectively convey the Legislature's intention to create a more stringent test of medical causation for the granting of accidental disability benefits. See the separate opinions of the members of the Court in *Maynard v. Board of Trustees,* 113 *N.J.* 169, 549 *A.*2d 1213 (1988), and *Ciecwisz v. Board of Trustees,* 113 *N.J.* 180, 549 *A.*2d 1218 (1988).

■ We are satisfied, in the circumstances of this case, that the Board of Trustees and the Appellate Division did not create an artificial category of disqualification for accidental disability benefits, but rather found, under the standards of *Kane v. Board of Trustees, Police & Firemen's Retirement System,* 100 *N.J.* 651, 498 *A.*2d 1252 (1985), that claimant was not injured in a traumatic event that would entitle him to accidental disability benefits. In that unanimous effort to impart consistency to the application of the term "traumatic event," we said:

> [T]o be eligible for accidental disability retirement allowance, a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power.
>
> [*Kane v. Board of Trustees, supra,* 100 *N.J.* at 663, 498 *A.*2d 1252.]

The ALJ found that both factors one and two were met, but that the third factor was not satisfied on the facts of the case.

■ Courts have only a limited role to play in reviewing the actions of other branches of government. In light of the executive function of administrative agencies, judicial capacity to review administrative actions is severely limited. *Gloucester County Welfare Bd. v. New Jersey Civil Serv. Comm'n,* 93 *N.J.* 384, 390, 461 *A.*2d 575 (1983). Courts can intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy. Although sometimes phrased in terms of a search for arbitrary or unreasonable agency action, the judicial role is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors. *Campbell v. Department of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963).

Although the ALJ did state in his findings that "lifting and twisting cases, without more, have not been considered traumatic events," his ultimate conclusion was that the "factual matrix" of the case did not constitute "a great rush of force or uncontrollable power." Officer Mazza described the experience as a "severe twist." We affirm, not because no lifting or twisting case can ever be considered traumatic, but because this twisting case was found not to be traumatic by the Pension Trustees because it did not involve a great rush of force or uncontrollable power. The ALJ and the Trustees tried to follow the law and there is sufficient evidence in the record to sustain their conclusion. We cannot say that their application of the facts to the law is so unreasonable as to constitute an arbitrary and capricious abuse of discretion.

The judgment of the Appellate Division is affirmed.

HANDLER, J., dissenting.

In this case, Dennis Mazza, a park patrolman for the Essex County Park Commission for over sixteen years, seeks accidental

disability benefits for an injury that occurred while on mounted patrol in the South Mountain Reservation. As Mazza was attempting to get across a stream, the horse suddenly and unexpectedly reared up, spinning sharply around to the left, almost falling over. As the horse reared spinning around, "[Mazza's] body went the other direction," severely twisting his back at the waist. The accident rendered Mazza helpless. The horse took Mazza, slumped over in the saddle, back to the stable. The injury left him permanently disabled. Mazza, an experienced horseman of approximately fifteen to twenty years, had never before suffered a serious fall or mishap, and had ridden through this particular stream several times.

Accidental disability entitles an injured or disabled employee to greater benefits than he or she would receive on retirement for an ordinary disability. To qualify for accidental disability, a member of the Police and Firemen's Retirement System must satisfy three requirements. *N.J.S.A.* 43:16A–7(1). Those requirements are: first, that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of their regular duties; second, that such disability was not the result of the member's willful negligence; and third, that such member is mentally or physically incapacitated for the performance of his or her usual duty or any other available duty. *Kane v. Board of Trustees, Police and Firemen's Retirement Sys.*, 100 *N.J.* 651, 660, 498 *A.*2d 1252 (1985). It is undisputed that Mazza has established the second and third requirements. However, the Division of Pensions and Benefits and the Appellate Division both determined that Mazza did not satisfy the first requirement, that the injury was the result of a "traumatic event" within the meaning of *N.J.S.A.* 43:16A–7(1). The majority shares that conclusion. *Ante* at 24, 667 *A.*2d at 1053.

For an injury to arise from a traumatic event, this Court has required a litigant to establish three factors: first, the injuries were not induced by the stress and strain of normal work effort;

second, the plaintiff met involuntarily with the object or matter that was the source of the harm; and third the source of the injury was a great rush of force or uncontrollable power. *Kane, supra,* 100 *N.J.* at 663, 498 *A.*2d 1252.

In denying Mazza's claim for accidental disability, the Appellate Division focused on the requirement of a great rush of force, and assumed that this element requires the injury to be the direct result of " 'the violent exposure of the body to some external force.' " (quoting *Cattani v. Board of Trustees, Police and Firemen's Retirement Sys.,* 69 *N.J.* 578, 586, 355 *A.*2d 625 (1976)). Implicit in this explanation of the force-phenomenon is the suggestion that a "violent exposure" entails a tangible, physical impact. Or, put differently, absent a physical impact, it becomes very difficult to determine whether the force resulting in injury entails a "violent external exposure" or is only self-generated. Hence, concentrating on the moment of injury, when Mazza's back was twisted, the Appellate Division found that his experience was most like a "twisting case" because Mazza's own actions, rather than an impact with an external force, caused the injury. The majority, while professing to omit any requirement that there be a tangible impact in conjunction with an exposure to a violent external force, nevertheless discounts in this case both the severity and external nature of the force because there was no tangible impact. *Ante* at 25, 667 *A.*2d at 1053–1054.

The Court's application of the standard for determining a traumatic event in these circumstances is incorrect and unjust. In first interpreting the traumatic event standard of the statute, this Court recognized that a " 'traumatic event' would ordinarily involve a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force." *Cattani, supra,* 69 *N.J.* at 586, 355 *A.*2d 625. However, the Court also acknowledged that there may be exceptions to this common type of occurrence. *Ibid.* In *Kane,* the Court developed a three-part test that did not expressly incorporate impact as a precondition of the "violent exposure"

requirement in the standard for determining a "traumatic event." 100 *N.J.* at 663, 498 *A.*2d 1252. Rather, *Kane* explained that "[t]he *source* of the injury must have *originated from* a physical object or external matter causing a great *rush* of force or *uncontrollable* power." *Ibid.* (emphasis added). It did not posit the need for an actual impact with the physical object constituting the originating source for the force or power that causes the injury.

In his dissent in the Appellate Division opinion, Judge Levy recognized that it is not necessary to establish a violent impact with a physical object or external matter, but rather *Cattani* and *Kane* required a litigant to show only that " '[t]he *force* or *power* must originate from sources other than the injured party.' " (citing *Kane,* 100 *N.J.* at 662, 663, 498 *A.*2d 1252) (emphasis added). *See also Gable v. Board of Trustees, Public Employees Retirement Sys.,* 115 *N.J.* 212, 220, 557 *A.*2d 1012 (1989) (quoting *Kane,* 100 *N.J.* at 663, 498 *A.*2d 1252, " 'the force or power must originate from sources other than the injured party.' "). Thus, to define a traumatic event as one that entails a physical impact would, according to Judge Levy, render "any disability caused by twisting ... automatically ... ineligible for accidental benefits;" hence, in a case such as this, one must "analyze the circumstances bearing on the proximate causation of the petitioner's disability."

Applying that understanding to this case, Judge Levy stated that "[t]he critical focus must involve the horse's actions which caused [Mazza's] waist to twist and the relationship of those actions to the overall situation." Considering the size and weight of the horse and the totally unexpected nature of the accident, Judge Levy stated that

> [i]t would be myopic to ignore the force created by the horse and conclude, from that view, the force causing his back injuries originated within himself. A grand view of the occurrence reveals petitioner as the victim of the horse's actions, and the uncontrolled violence which initiated the great physical force causing petitioner's waist to twist came only from the horse.

Clearly an incident may be traumatic despite the fact that the external force directly causing the injury did not have a tangible impact. *Cattani,* 69 *N.J.* at 586, 355 *A.*2d 625. In the absence of

an "impact," common sense and experience are adequate guides for the determination of what creates a great rush of force. They tell us, in this case, that if a 1000 pound horse unexpectedly rears up spinning, violently throwing the body of the rider in the opposite direction, the rider will be subjected to a great rush of force.

Further, this accident cannot be fairly characterized as either ordinary or expected. Undoubtedly, mounted patrol duties of a police officer entail a risk of physical injury because of the inherent danger in riding a horse. Nevertheless, the ongoing risk of danger does not mean that if that risk materializes, its occurrence can be deemed ordinary or expected. Thus, it may be predictable that police officers will be shot while performing their duty, but it is hardly predictable when, or if, an officer will be shot. *Cf. Gable, supra,* 115 *N.J.* at 223–24, 557 *A.*2d 1012 (quoting from lower court decision, 224 *N.J.Super.* 417, 423, 540 *A.*2d 908 (App.Div.1988), and recognizing that "[a]lthough a corrections officer may realize that there is a 'potential that he or she will be called upon to subdue an inmate, an officer does not expect his or her daily routine will normally involve being struck by an aggressive or escaping inmate.' "). Mazza was an experienced horseman who had ridden for approximately sixteen years in the performance of his duties as a mounted patrolman and had taken this specific path many times. He had never experienced an accident of this nature and he had no reason to expect, on that clear October morning, that he would suffer such an injury.

While the majority correctly points out that a reviewing court must, on judicial review, defer to the determination of administrative agency findings of fact, *ante* at 25, 667 *A.*2d at 1053, "[a]n appellate tribunal is, however, in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." *Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973). The Board's denial of accidental disability retirement benefits flows from its narrow interpretation of the third element of the *Kane* test for determining a traumatic event.

However, there is no impact requirement when considering whether an event was traumatic under *N.J.S.A.* 43:16A–7. A showing of violent impact is neither dictated by the statute or the judicial interpretation of the statute, nor is it likely to lead to the fair, just, and consistent award of disability benefits. The instances of involuntary encounters with great rushes of force of the magnitude necessary to constitute a traumatic event without physical impact will be relatively rare. Hence, the Court should not be concerned that the absence of an impact requirement will erode the stricter standard the Legislature meant to impose with the substitution of "traumatic event" for "accident."

In sum, I believe Mazza is entitled to receive accidental disability because he satisfied the requirements of *N.J.S.A.* 43:16A–7, including the requirement of suffering a traumatic event as defined by *Cattani* and *Kane.*

Accordingly, I dissent.

Justice STEIN joins in this opinion.

*For affirmance*—Chief Justice WILENTZ, and Justices POLLOCK, O'HERN and GARIBALDI—4.

*For reversal*—Justices HANDLER and STEIN—2.