*Rinaldi,* 303 *N.J.Super.* 239, 256–57, 696 *A.*2d 744 (App.Div.1997); *R.* 2:11–3(e)(1)(E).

Affirmed.

719 A.2d 699

GREGORY MULLER, PETITIONER–APPELLANT, v. BOARD OF TRUSTEES, POLICE AND FIREMEN'S RETIREMENT SYSTEM, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1998—Decided November 10, 1998.

Before Judges SKILLMAN, PAUL G. LEVY and LESEMANN.

*Lawrence A. Mintz* argued the cause for appellant (*Goldenberg, Mackler & Sayegh*, attorneys; *Mr. Mintz*, on the brief).

*David Dembe*, Deputy Attorney General, argued the cause for respondent (*Peter Verniero*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Sherrie L. Gibble*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This is an appeal from the denial of an application for an accidental disability retirement allowance from the Police and Firemen's Retirement System.

Petitioner was employed by the Township of Egg Harbor Police Department as a detective sergeant. On September 29, 1992, petitioner and two other police officers executed a warrant

for the search of a motel room for drugs and drug paraphernalia. After being voluntarily admitted into the room, the officers gave a copy of the warrant to a female suspect. The suspect, who appeared to be under the influence of drugs, became very belligerent,—yelling, calling the officers vulgar names, making threats, and refusing to sit down while the officers conducted the search. When the suspect continued this conduct for some period of time, the officers told her she was under arrest, and directed her to put her hands behind her back. However, the suspect refused. As a result, petitioner reached out to grab her, but she resisted by biting the middle finger on his left hand and locking it in her mouth. Petitioner was unable to extricate his finger from the suspect's grasp, and as he was struggling with her, he twisted his left shoulder. Petitioner then grabbed the suspect's hair and pulled himself away from her. As the petitioner yanked his finger out of the suspect's mouth, he stumbled over debris on the floor and crashed into a nearby wall, severely injuring the same shoulder he had previously twisted while struggling with the suspect. The other two officers eventually subdued the suspect and completed their search which revealed cocaine and drug paraphernalia.

Petitioner had surgery on his left shoulder shortly after this incident and continued to work as a police officer for several more years. However, this surgery did not adequately repair the damage to his shoulder, and he had to have additional surgery in 1995. This surgery also failed to adequately repair petitioner's shoulder, and in 1996 he filed an application for an accidental disability retirement with the Board of Trustees of the Police and Firemen's Retirement System (the Board).

The Board initially denied petitioner's application on the grounds that the September 29, 1992 incident had not been a "traumatic event" and that his disability was not the "direct result" of this incident. However, the Board agreed that petitioner was permanently and totally disabled from performing the duties of a police officer. Consequently, the Board granted petitioner an ordinary disability pension.

Petitioner appealed the denial of his application for an accidental disability pension, and the Board referred the matter to the Office of Administrative Law. At the parties' request, the Administrative Law Judge (ALJ) to whom the matter was assigned bifurcated the issue of whether the September 29, 1992 incident was a "traumatic event" from the issue of whether petitioner's disability was a "direct result" of that incident. Based on the evidence presented at a hearing, the ALJ found that "[w]hile petitioner's injury to his shoulder may have been caused by his own use of great force to obtain the release of his finger, the precipitating cause of this was the violent level of force applied to petitioner by the assailant." Therefore, the ALJ concluded that "petitioner's injury should be regarded as having a traumatic origin since he was subjected to a 'great' external force." Accordingly, the ALJ made a "partial decision" in petitioner's favor on the "traumatic event" issue and submitted the matter to the Board for immediate review.

The Board reversed the ALJ's recommended decision. The Board concluded, contrary to its original decision, that petitioner's disability was the "direct result" of the September 29, 1992 incident. However, it reaffirmed the denial of his application for an accidental disability pension on the ground that this incident was not a "traumatic event." The Board found that "[t]he disabling injury occurred when [petitioner's] shoulder hit the wall," and it concluded that this occurrence was "akin to a fall from ground level ... [which] is not a traumatic event." We reverse.

To be eligible to retire on an accidental disability pension, a member of the Police and Firemen's Retirement System must establish that he is "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties." *N.J.S.A.* 43:16A–7.[1] The Board does not dispute that petitioner is "totally and

---

[1] The laws governing other state pension systems contain identical provisions. See *N.J.S.A.* 43:15A–43 (Public Employees' Retirement System); *N.J.S.A.*

permanently disabled," that his disability is a "direct result" of the September 21, 1992 incident, and that the incident occurred "during and as a result of the performance of his regular or assigned duties." Thus, the Board's denial of petitioner's application rests solely on its conclusion that the incident did not constitute a "traumatic event."

For an accident to constitute a traumatic event,

a worker must demonstrate (1) that his injuries were not induced by the stress or strain of the normal work effort; (2) that he met involuntarily with the object or matter that was the source of the harm; and (3) that the source of the injury itself was a great rush of force or uncontrollable power.

[*Kane v. Board of Trustees, Police & Firemen's Retirement Sys.*, 100 *N.J.* 651, 663, 498 *A.*2d 1252 (1985).]

Moreover, this force or power "must originate from sources other than the injured party." *Ibid.*

The Court has recognized that violent altercations between law enforcement officers and inmates may satisfy these tests. In *Gable v. Board of Trustees, Public Employees' Retirement Sys.*, 115 *N.J.* 212, 224–25, 557 *A.*2d 1012 (1989), the Court stated:

[It] is not part of the stress or strain of the "normal" work effort of a corrections officer to be violently assaulted by an inmate. Corrections officers are not hired to be punching bags. Moreover, [petitioners] clearly met involuntarily with the object or matter that was the source of the harm—in this case, attacks by unruly inmates. Finally, the source of each injury was a great rush of force or uncontrollable power. Unlike slip-and-fall accidents, the source and power leading to [petitioners'] injuries originated from a source other than the injured party.

The Court also indicated that there were policy reasons for avoiding an unduly restrictive interpretation of the term "traumatic event" in connection with incidents occurring in the performance of law enforcement duties:

We do not want corrections officers to shy away from subduing unruly inmates. Nor do we want to discourage police officers from chasing criminal suspects. If law-enforcement officers act cautiously, they will not get injured—but they will also not be doing their jobs properly, and the public will not be as well protected.

[*Id.* at 224, 557 *A.*2d 1012.]

18A:66–39(c) (Teachers' Pension and Annuity Fund); *N.J.S.A.* 53:5A–10(a) (State Police Retirement System).

In this case the Board does not deny that petitioner satisfied the first test set forth in *Kane*—that is (1) "his injuries were not induced by the stress and strain of the normal work effort." However, the Board argues that petitioner failed to satisfy the second and third tests because "the force involved originated with [petitioner] and was not a 'great rush of force.'" The Board's view of the operative facts is that the "source of the harm" to petitioner was his voluntary effort "to extract his finger from [the suspect's] mouth" and that the force he used to do this was not "great."

The Board concedes that if the suspect had bitten off petitioner's finger, causing him to become totally and permanently disabled from performing the duties of a police officer, the incident would have constituted a traumatic event entitling him to an accidental disability pension. We discern no reason why there should be a different outcome simply because the disabling injury was not an immediate result of the suspect's assault but instead resulted from petitioner's efforts to extricate his finger from her mouth. In our view, a violent assault upon a law enforcement officer may constitute a "traumatic event" within the intent of *N.J.S.A.* 43:16A–7, even though the officer's actions in responding to that assault are part of the overall chain of causation ultimately resulting in the disabling injury. Therefore, we conclude that under a proper application of the *Kane* tests the "source of the harm" should be viewed as the suspect's act of violently seizing petitioner's finger with her teeth and that that act constituted "a great rush of force or uncontrollable power." *See Gable, supra,* 115 *N.J.* at 224–25, 557 *A.*2d 1012.

We reject the Board's argument that the incident which resulted in petitioner's disabling injury was "akin" to a simple slip and fall case. As the Court pointed out in *Maynard v. Board of Trustees, Teachers' Pension & Annuity Fund,* 113 *N.J.* 169, 175, 549 *A.*2d 1213 (1988), "[i]n slip and fall cases, no force or power originates anywhere except from the person falling." In contrast, petitioner was subjected to a violent external force in the form of

an assault by a criminal suspect. We also reject the Board's attempt to analogize this case to *Mazza v. Board of Trustees, Police & Firemen's Retirement Sys.*, 143 *N.J.* 22, 667 *A.*2d 1052 (1995), in which the Court upheld the Board's denial of an application for accidental disability by a police officer whose horse "bucked" and "reared up," causing the officer's body to twist in the saddle. As we noted in *Flores v. Board of Trustees, Public Employees Retirement Sys.*, 287 *N.J.Super.* 274, 279, 670 *A.*2d 1113 (App.Div.1996), "the accident in *Mazza* did not involve a completely external force but rather the interaction between a mounted policeman and his horse." In contrast, the suspect's assault upon petitioner constituted a purely external force over which he had no control. Moreover, petitioner's accident, unlike the one involved in *Mazza*, did not involve simply a "twisting" of his body but rather a violent crash into the wall of the suspect's motel room.

Reversed.