927 A.2d 564

ARLENE DENNIS, PETITIONER–APPELLANT, v. BOARD OF
TRUSTEES, PUBLIC EMPLOYEES' RETIREMENT
SYSTEM, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 17, 2007—Decided July 11, 2007.

Before Judges KESTIN, PAYNE and LIHOTZ.

*Richard A. Friedman,* argued the cause for appellant (*Zazzali, Fagella, Nowak, Kleinbaum & Friedman,* attorneys; *Mr. Friedman,* of counsel and on the brief with *Jason E. Sokolowski*).

*Eileen S. DenBleyker,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Dawn M. Harris,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PAYNE, J.A.D.

Petitioner, Arlene Dennis, appeals from a final decision by respondent, the Board of Trustees, Public Employees' Retirement System (PERS), affirming a grant to her of ordinary disability retirement benefits, pursuant to *N.J.S.A.* 43:15A–42, but denying accidental disability retirement benefits, pursuant to *N.J.S.A.* 43:15A–43, on the ground that petitioner's total and permanent injuries, sustained during the course of her work as a school bus driver, were not the result of a "traumatic event" as required by statute. The appeal thus raises the narrow issue of whether, as expressed by the Supreme Court in *Kane v. Bd. of Trs., Police and Firemen's Ret. Sys.,* 100 *N.J.* 651, 663, 498 *A.*2d 1252 (1985), the source of petitioner's injury itself "was a great rush of force or uncontrollable power."

Following an injury occurring on November 8, 2000, petitioner, a member of PERS, sought accidental disability retirement benefits from that system. The Board of Trustees of PERS denied petitioner's application, finding that the accident did not constitute a "traumatic event," but granted petitioner ordinary disability retirement benefits, effective November 1, 2002, finding that peti-

tioner was totally and permanently disabled from the performance of her regular and assigned duties, and that her disability was a direct result of the November 8 incident.

Petitioner appealed, and the matter was referred to the Office of Administrative Law for an evidentiary hearing. Prior to the hearing, PERS stipulated that petitioner had met the first two of *Kane's* requirements—that her injuries were not induced by the stress or strain of normal work effort, and that she met involuntarily with the object or matter that was the source of the harm. *Ibid.* However, following the hearing, the Administrative Law Judge (ALJ) determined in a comprehensive initial decision, as had the PERS Board, that petitioner had failed to meet *Kane's* third requirement, finding that "the incident of November 8, 2000 does not constitute a traumatic event within the meaning of *N.J.S.A.* 43:15A–43." Upon further appeal, the Board accepted the finding of the ALJ that the incident of November 8 was not a traumatic event, and it accepted the ALJ's recommendation that accidental disability retirement benefits be denied. This appeal followed, and we reverse. We confine our analysis to the one issue raised in the administrative proceeding: whether a "traumatic event" occurred.

The record of the hearing before the ALJ discloses that, at the time of the event at issue, petitioner was a school bus driver, employed by the Pennsauken Board of Education to transport special needs students, most of whom were autistic, to the private schools to which they had been assigned. On the morning of November 8, petitioner had stopped at the school that "M.," a third-grade student of eight or nine years of age, attended. As was her custom, petitioner was sitting in the driver's seat, handing school bags with her right hand to each student as the student exited the bus. As M. approached the front of the bus, petitioner noticed that he was gaining momentum, while twisting from side to side in a manner that petitioner found to be "peculiar." Petitioner testified that she "wasn't sure exactly what he was doing." As he reached petitioner, according to her testimony, M. "basically

turned his back to me and threw himself at me ... with his shoulder and his back." Petitioner, concerned that M. would injure himself on the dashboard, steering wheel or gear shift, and concerned for her own safety, put up her hands to break M.'s fall. In doing so, petitioner bent back both wrists and suffered an injury to her brachial plexus. M. fell onto petitioner's lap, but then slid to the floor.

In his initial opinion denying accidental disability retirement benefits, the ALJ stated:

> The purported "great rush of force" in this case consists of a third grade student who flung himself backward onto petitioner's lap. Petitioner's physical description of M. in no way indicates that he was in any way oversized in comparison to other third graders. Nor is there anything in the record to indicate M. was significantly older, and therefore bigger, than the other third graders.
>
> **I FIND** that the force generated by the third grader's conduct does not meet the definition of a "great rush of force" or "uncontrollable power," as defined in the case law. Therefore, petitioner has failed to satisfy the third prong of the *Kane* test.

Receipt of the benefits sought by petitioner requires a showing of permanent and total disability, uncontested here, taking place "as a direct result of a traumatic event occurring during and as a result of the performance of [her] regular or assigned duties...." *N.J.S.A.* 43:15A–43. The requirement of evidence of a "traumatic event" appears, as well, in connection with statutes providing for accidental disability pension benefits under the State's other two public pension systems: the Police and Firemen's Retirement System, *see N.J.S.A.* 43:16A–7, and the Teacher's Pension and Annuity Fund, *see N.J.S.A.* 18A:66–39. Precedent construing the three statutes is thus relevant to the present matter.

What constitutes a "traumatic event" has vexed our courts since the Legislature's adoption of that statutory requirement, in lieu of a prior requirement that an "accident" be the precipitating cause of the disability. *See* L. 1966, c. 67, § 4; *see also Maynard v. Bd. of Trs. of the Teachers' Pension and Annuity Fund,* 113 *N.J.* 169, 172–73, 549 A.2d 1213 (1988); *Cattani v. Bd. of Trs., Police and Firemen's Ret. Sys.,* 69 *N.J.* 578, 583–84, 355 A.2d 625 (1976); and

*Russo v. Teachers' Pension and Annuity Fund,* 62 *N.J.* 142, 151, 299 *A.*2d 697 (1973) (discussing legislative and judicial history).

It is clear that the Legislature, by passage of this amendment, sought to limit awards of accidental disability retirement benefits—which are markedly higher than ordinary disability retirement benefits (*compare N.J.S.A.* 43:15A–46 with *N.J.S.A.* 43:15A–45)—to more narrowly drawn circumstances and to a smaller cohort than had previously been the case. Unfortunately, however, the language adopted by the Legislature gives little guidance as to what constitutes a "traumatic event." Judicial interpretation has filled that void, but in a manner that has highlighted the difficulty of giving consistent meaning to a term potentially applicable to the wide range of workplace circumstances in which accidental injury meriting enhanced compensation has been considered.

■ In its opinion in *Cattani,* the Supreme Court rejected our early conclusion, rendered in *Hillman v. Bd. of Trs., Public Employees' Ret. Sys.,* 109 *N.J.Super.* 449, 460–61, 263 *A.*2d 789 (App.Div.1970), that a "traumatic" event must be "undesigned, unexpected and unusual," finding that formulation to be "too broad" and to "frustrate[ ] the restriction which the Legislature intended to place on the granting of an accidental disability pension when it substituted the expression 'traumatic event' for the word 'accident.' " 69 *N.J.* at 585, 355 *A.*2d 625. The *Cattani* Court determined that:

> The phrase 'traumatic event' would ordinarily involve a mishap or accident involving the application of some kind of external force to the body or the violent exposure of the body to some external force.
>
> [*Id.* at 586, 355 *A.*2d 625.]

However, the Court also recognized that "a traumatic event may possibly be found in some situations which do not literally fall within the external force or violence concept but still might be regarded as having a traumatic origin." *Ibid.*

■ Later, in *Kane,* the Supreme Court refined its definition of a traumatic event by exempting injuries sustained as the result

of "the stress or strain of the normal work effort," and requiring that the petitioner "meet involuntarily with the object or matter that was the source of the harm," and establish that "the source of the injury itself was a great rush of force or uncontrollable power" that the petitioner did not bring into motion. 100 *N.J.* at 663, 498 *A.*2d 1252. As examples of qualifying injuries, the Court mentioned a fireman thrown off the roof of a building by a sudden explosion or burst of flames, a fireman who is struck by a falling beam, or one who falls off the top step of a ladder.[1]  *Ibid.*

Despite the formulation of a standard that the Supreme Court "hope[d]" would "bring clarification to the area," *ibid.,* the precise nature of what constitutes a traumatic event continues to create interpretational difficulties for the Court and, consequentially, for us [2] and the Boards involved. *See, e.g., Maynard, supra,* 113 *N.J.* at 177–79, 549 *A.*2d 1213 (Stein, J., concurring and O'Hern, J., dissenting); *Ciecwisz v. Bd. of Trs., Police and Firemen's Ret. Sys.,* 113 *N.J.* 180, 182–92, 549 *A.*2d 1218 (1988) (O'Hern, J., joined by Handler, J., dissenting, and Stein, J., separately dissenting) and *Mazza v. Bd. of Trs., Police and Firemen's Ret. Sys.,* 143 *N.J.* 22, 25–30, 667 *A.*2d 1052 (1995) (Handler, J., joined by Stein, J., dissenting). As Justice O'Hern complained in *Maynard:* "In focusing on Justice Clifford's examples of a 'great rush of force,' the majority has turned useful guides to the Legislature's intent into an artificially-created standard of ground-level disqualification." 113 *N.J.* at 178, 549 *A.*2d 1213.

---

[1] This last example appears to be inconsistent with cases denying benefits for slip and fall accidents, *see, e.g. Maynard, supra,* 113 *N.J.* 169, 549 *A.*2d 1213, and has unnecessarily invited nice distinctions as to the distance of a fall required for recovery of accidental disability retirement benefits in cases that could have been resolved more consistently by a focus on the cause of the fall. See discussion in *Angiola v. Bd. of Trs., Public Employees' Ret. Sys.,* 359 *N.J.Super.* 552, 557 n. 1, 821 *A.*2d 98 (App.Div.2003).

[2] *See, e.g., Caminiti v. Bd. of Trs. Police and Firemen's Ret. Sys.,* 394 *N.J.Super.* 478, 927 *A.*2d 560, 2007 *WL* 2004943 (App.Div.2007).

■ While we appreciate Justice O'Hern's comments, we need not address them substantively in the present case of traumatic injury, in which the great rush of force required by *Kane*, consisting of the hurtling body of M., certainly existed. In reaching this conclusion, we are mindful of the deference that we must accord the decisions of administrative agencies. *Mazza, supra,* 143 *N.J.* at 25, 667 *A.*2d 1052; *Henry v. Rahway State Prison,* 81 N.J. 571, 579–80, 410 A.2d 686 (1980); *Campbell v. Dept. of Civil Serv.,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). Nonetheless, "[a]n appellate tribunal is in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." *Mazza, supra,* 143 *N.J.* at 29, 667 *A.*2d 1052 (Handler, J., dissenting) (quoting *Mayflower Securities v. Bureau of Securities,* 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973)).

■ Here, in a case in which the facts are essentially undisputed, we differ from the conclusion reached by the Board as to the applicability of *N.J.S.A.* 43:15A–43 to petitioner's case. We perceive no legal basis for determining that the force created by the eight- to nine-year-old, approximately sixty- to seventy-pound, boy who launched himself into petitioner was inadequate to meet the *Kane* standard—a conclusion that the ALJ and the Board apparently reached solely by determining that M. was no bigger than other children of his age, and without adequate consideration of the potential for injury inherent in an average child of M.'s age who hurled himself at petitioner in the fashion that M. employed. Nor do we find any evidentiary basis for concluding that a statutorily-cognizable "traumatic event" would not exist when an average child of M.'s age engaged in conduct similar to that of M. In this regard, we note that a "traumatic event" has been found to exist on the basis of the exertion of far less force. *See, e.g., Muller v. Bd. of Trs., Police and Firemen's Ret. Sys.,* 316 *N.J.Super.* 94, 719 *A.*2d 699 (App.Div.1998) (bite by suspect, leading to struggle and fall, in which petitioner's previously-injured shoulder was re-injured); *Duignan v. Public Employees' Ret. Sys.,* 223 *N.J.Super.* 208, 218, 538 *A.*2d 432 (App.Div.1988) (holding that

"[i]n an organ as sensitive as the eye the invasion of broom bristles can be a 'great rush of force or uncontrollable power.' ").

We regard the circumstances presented by this case as fitting comfortably within both the intent and the language of *N.J.S.A.* 43:15A–43 and the requirements of *Kane.* Our review of the record satisfies us that the Board's decision to the contrary lacked substantial support in the essentially-uncontested facts set forth at the hearing; and that in applying the legislative policies articulated in connection with the accidental disability retirement benefit statute to the facts that were presented, the Board reached conclusions that could not reasonably have been drawn from the record before it. *Mazza, supra,* 143 *N.J.* at 25, 667 *A.*2d 1052. While we continue to advocate a re-evaluation of *Kane,* or at least a relaxation of its standards to include situations outside the strictures of its tripartite test, as *Cattani* suggested might be necessary, in this case, we are satisfied that *Kane,* even as literally applied, provided ample grounds for the relief that petitioner seeks.

Reversed.