**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5039-18

RODERICK KNOX,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE and FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Submitted February 8, 2021 – Decided March 12, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of Treasury, PRFS No. 3-10-5138.

Ionno and Higbee, attorneys for appellant (Sebastian B. Ionno and D. Rebecca Higbee, on the briefs).

Robert Seymour Garrison, Jr., attorney for respondent (Thomas R. Hower, on the brief).

PER CURIAM

This case concerns the eligibility of a retired firefighter for what is known as "accidental disability" pension under N.J.S.A. 43:16A-7(1) and its associated regulations. The case arises out of a permanent disabling injury a firefighter sustained when a heavy piece of equipment suddenly thrust forward from behind his seat within the fire truck. The Board of Trustees of the Police and Firemen's Retirement System ("the Board") denied the firefighter's claim after concluding the incident was not "undesigned" and "unexpected." We disagree with that legal assessment of the accident and reverse.

I.

We frame our discussion with a short summary of the applicable eligibility principles.

Under N.J.S.A. 43:16A-7(1), an accidental disability pension provides an eligible employee with greater benefits than an award of "ordinary" disability retirement benefits. An accidental disability pension has more stringent eligibility requirements than an ordinary disability pension. Of most relevance here, N.J.S.A. 43:16A-7(1) requires the applicant to prove, among other things, that his or her permanent disabling injury was the result of a "traumatic event" in the course of employment.

A-5039-18

In Richardson v. Bd. of Trs., Police and Firemen's Ret. Sys., 192 N.J. 189 (2007), the Supreme Court clarified the meaning of the term "traumatic event" under N.J.S.A. 43:16A-7(1). As delineated in Richardson, a claimant for accidental disability retirement benefits must establish:

(1) that he is permanently and totally disabled;

(2) as a direct result of a traumatic event that is

a. identifiable as to time and place,

b. undesigned and unexpected, and

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

(3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;

(4) that the disability was not the result of the member's willful negligence; and

(5) that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Id. at 212-13.]

As the Court explained in Richardson, "[t]he polestar of the inquiry is whether, during the regular performance of his job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has

3

occurred and directly resulted in the permanent and total disability of the member." Id. at 214.

The Court provided in Richardson the following examples of the kinds of accidents occurring during ordinary work efforts that would qualify for accidental disability retirement benefits: "A policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court." Ibid.

The Court also provided in Richardson counter-examples of situations that would not qualify for these benefits under a certain set of facts, but would qualify under a different set of facts. For example, a police officer who has a heart attack while chasing a suspect would not qualify because "work effort, alone or in combination with pre-existing disease, was the cause of the injury." Id. at 213. However, the Court explained that "the same police officer [who was] permanently and totally disabled during the chase because of a fall, has suffered a traumatic event." Ibid. Likewise, a gym teacher who develops arthritis "from repetitive effects of his work over the years" would not qualify as suffering a traumatic event; however, if the same gym teacher trips over a riser and is injured, that injury would satisfy the standard. Ibid.

4

The present case involves petitioner Roderick Knox, a retired municipal firefighter who was employed by the City of Atlantic City. Knox was injured in an unwitnessed incident on November 7, 2014.

According to his testimony at the hearing before the Administrative Law Judge ("ALJ"), while Knox was sitting in the fire truck after returning from a call, a piece of equipment known as a self-contained breathing apparatus ("SCBA") spontaneously ejected from its spring-loaded holder behind his head. To prevent the SCBA from striking him in the head, Knox raised his right arm quickly, causing him to tear his rotator cuff. The SCBA weighs about twenty-five to thirty pounds.

Knox had previously injured his right rotator cuff in 1999 when he slipped and fell at work, causing him to miss two or three months of work on medical leave. As the result of the present 2014 reinjury, Knox had surgery to repair the rotator cuff. After his surgery and physical therapy, he failed a fitness-for-duty medical examination and was not permitted to return to work. In addition, Knox has been unable to resume certain of prior activities.

Knox applied for accidental disability benefits with the Board. The Board denied his application in a pre-hearing letter. In that letter, the Board agreed

with Knox that he had been "totally and permanently disabled from the performance of [his] regular and assigned job duties." However, the Board determined that Knox was ineligible for accidental disability benefits for two reasons. First, the Board found the incident that caused his arm reinjury was not, under the criteria of N.J.S.A. 43:16A-7(1) and Richardson, "undesigned and unexpected." Second, as to medical causation, the Board initially determined Knox's disability "is the result of a pre-existing disease alone or a pre-existing disease that is aggravated or accelerated by the work effort."

Several witnesses testified at the administrative hearing before the ALJ. They included Knox himself, a retired Atlantic City Deputy Fire Chief named Edward Coursey, and a current Battalion Chief named Duane Brock.

Coursey investigated the 2014 incident, although he had not seen it occur. According to the ALJ's findings of fact, Coursey was "aware of incidents where SCBA[s] have self-ejected and had experienced this himself, although he does not know how often this occurs."

Brock likewise did not see the 2014 incident, but mainly testified about his knowledge of Knox's good physical condition before the accident. According to the ALJ's findings of fact, Brock "had never witnessed [an SCBA] ejecting from its holder without someone touching it first."

6

In addition to the fact witnesses, the ALJ heard competing testimony from medical experts from both sides. Knox's medical experts, his surgeon and treating internal medicine doctor, presented opinions that he suffered a permanent injury to his right shoulder in the 2014 incident and that it was a new injury that was not caused by or significantly resulting from the 1999 injury. The Board countered with expert medical testimony from an orthopedic surgeon, who opined that the initial 1999 injury to Knox's shoulder was the primary cause of his disability rather than the 2014 incident. The ALJ concluded that Knox had met his burden of showing medical causation.

On the pivotal issue now on appeal, the ALJ concluded in his written decision that the 2014 incident was not an "unexpected and undesigned" event. The ALJ did find that "stopping a SCBA from hitting a firefighter in the face when it becomes dislodged from its holder was unusual." Nevertheless, the ALJ recognized that "[n]either the petitioner nor Brock had ever experienced a SCBA being ejected from its holder without someone touching it." The ALJ also found that Coursey had "not only heard of this occurring but experienced it himself."

Evaluating the circumstances, the ALJ found that at the time Knox was injured, "he was intentionally engaged in his normal work activity and was

7

expected to handle heavy firefighting equipment as part of his normal work activity."

A few days after the ALJ issued his decision, Coursey submitted an unsworn letter to the agency, asserting that the ALJ misquoted his testimony. Coursey contended, in an effort to clarify his testimony, that he had seen situations "where SCBAs were not properly placed in the holder and came out, but not ejecting out, just sliding out." He added that in such "sliding out" incidents, "the spring loaded holder was not malfunctioning but rather it was an issue where the fire personnel didn't properly put the SCBA in its holder, and it would not cause a SCBA to eject out with such force without someone touching it, as it did with [C]aptain Knox. Because of this malfunction the apparatus was taken out of service."[1]

---

[1] Although the Board has not asked us to do so on appeal, we disregard Coursey's unsworn post-hearing letter that was submitted as an "exception." See N.J.A.C 1:1-18.4(c) ("Evidence not presented at the hearing [before an ALJ] shall not be submitted as part of an exception, nor shall it be incorporated or referred to within exceptions.") The transcript of Coursey's sworn testimony at the hearing speaks for itself.

In a final agency decision dated June 10, 2019, the Board adopted the ALJ's decision in all respects. Knox appeals that determination, specifically the ruling that his accident did not satisfy the criteria of <u>Richardson</u>.[2]

We review the Board's decision with a due degree of deference, recognizing its role as an administrative agency acting within the scope of its responsibilities. Our courts ordinarily will sustain the Board's ruling "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." <u>Russo v. Bd. of Trs., Police & Firemen's Ret. Sys.</u>, 206 N.J. 14, 27 (2011).

Even so, we apply de novo review on appeal to legal issues and matters that concern the agency's application of law to facts. The pivotal issue here, i.e., whether Knox's accident was "undesigned and unexpected," is a legal question of statutory interpretation, one which we review de novo. <u>G.S. v. Dep't of Human Servs.</u>, 157 N.J. 161, 170 (1999); <u>see also</u> <u>Mazza v. Bd. of Trs.</u>, 143 N.J. 22, 25 (1995) (noting the reviewing court's obligation to determine whether the agency correctly "follow[ed] the law").

---

[2] Because the Board adopted the ALJ's findings in their totality, medical causation of Knox's arm injury, which initially had been disputed, is no longer an issue.

Applying these well settled principles, we conclude the Board erred as a matter of law in this case by adopting a legal conclusion that Knox's disabling accident was not "undesigned" and "unexpected." The record indicates the ejection of the SCBA was spontaneous. There is no evidence that Knox himself had pushed the device into its bracket insecurely, or that any fellow firefighter had done so.

The ALJ appears to have misunderstood Coursey's testimony in this regard, as Coursey insisted that he had never seen the SCBA "eject out" before when it was not being touched. The hearing transcript makes clear that Coursey had never previously encountered a situation like this in which the SCBA thrust out of its place, without it being touched. There is no evidence here that Knox or anyone else touched the SCBA before it suddenly popped out, perhaps due to the bracket simply wearing out.

The circumstances here are comparable to the illustration the Supreme Court described in Richardson, 192 N.J. at 214, of a librarian suddenly being hit by a falling bookshelf while re-shelving books. The Court stated that such an unexpected event qualified for accidental disability benefits under the statute. Ibid. Here, although Knox was not hit by an object coming towards him, he raised his arm to prevent it from striking him in the head. That self-defensive

reaction, which caused the arm injury, is both understandable and consistent with the Court's guidance in Richardson.

Along the same lines, in Moran v. Bd. of Trs., Police & Firemen's Ret. Sys., 438 N.J. Super. 346 (App. Div. 2014), we reversed the Board's denial of accidental disability benefits stemming from an incident in which a firefighter injured himself when breaking down a door with his body in order to rescue people inside a burning building. We held that the combination of unusual circumstances could satisfy the "undesigned and unexpected" requirement. Id. at 354. In reversing the Board's denial, we concluded it misapplied Richardson in adopting an "unduly narrow view of what constitutes an 'undesigned and unexpected' traumatic event." Id. at 353. We respectfully reach the same conclusion here, even though Knox's conduct responding to the spontaneous events was not as dramatic or extensive. Knox's injury was undesigned and unexpected, within the intendment of Richardson.[3]

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] In compliance with Rule 1:36-3, we do not discuss or cite to the competing unpublished opinions referred to in the parties' briefs. If anything, the cases depict the fact-sensitive nature of eligibility under the Richardson criteria.

A-5039-18