NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1666-15T2

IN THE MATTER OF
ST. MARY'S GENERAL HOSPITAL
SFY 2016 CHARITY CARE SUBSIDY APPEAL.

_____

Argued May 16, 2017 — Decided June 9, 2017

Before Judges Reisner and Mayer.

On appeal from the New Jersey Department of
Health.

Steven D. Gorelick argued the cause for
appellant St. Mary's General Hospital
(Garfunkel Wild, P.C., attorneys; Marc A.
Sittenrich and Mr. Gorelick, of counsel and
on the briefs).

Francesco Ferrantelli, Jr., Deputy Attorney
General, argued the cause for respondent
Department of Health (Christopher S. Porrino,
Attorney General, attorney; Melissa H. Raksa,
Assistant Attorney General, of counsel; Mr.
Ferrantelli, on the brief).

PER CURIAM

Appellant St. Mary's General Hospital (Hospital) appeals from

a final agency decision of the New Jersey Department of Health

(Department) denying the Hospital's administrative appeal of the

Department's State Fiscal Year (SFY) 2016 charity care subsidy allocation. We affirm.

The Hospital alleged that the Department's determination of its charity care subsidy for SFY 2016 failed to use "the most recent census data" as required by statute. N.J.S.A. 26:2H-18.59i(b)(3).[1] Specifically, the Hospital challenged the Department's use of the 2000 United States decennial census to calculate the SFY 2016 charity care subsidy. According to the Hospital, using the 2000 decennial census data rather than "the most recent census data," deprived the Hospital of additional

_____

[1] This section provides:

> b. Beginning July 1, 2004 and each year thereafter, the charity care subsidy shall be determined according to the following methodology:
>
> . . .
>
> (3) Notwithstanding the provisions of paragraph (2) of this subsection to the contrary, each of the hospitals located in the 10 municipalities in the State with the lowest median annual household income according to the most recent census data, shall be ranked from the hospital with the highest hospital-specific reimbursed documented charity care to the hospital with the lowest hospital-specific reimbursed documented charity care. The hospital in each of the 10 municipalities, if any, with the highest documented hospital-specific charity care shall receive a charity care payment equal to 96% of its hospital-specific reimbursed documented charity care.

charity care subsidies accorded to the ten municipalities in New Jersey with the lowest median annual household income. <u>N.J.S.A.</u> 26:2H-18.59i(b)(3).

The New Jersey Health Care Cost Reduction Act (Act), <u>N.J.S.A.</u> 26:2H-18.51 to -18.69, established a Health Care Subsidy Fund, from which charity care subsidies are disbursed. <u>N.J.S.A.</u> 26:2H-18.58. Each year, the Legislature appropriates an amount for charity care subsidies. The Department then determines the subsidy that each eligible hospital will receive, using a formula prescribed by law. <u>N.J.S.A.</u> 26:2H-18.59i. However, in some fiscal years, the Legislature issues the Department additional instructions in the Appropriations Act.

In the 2016 Appropriations Act, the Legislature instructed the Department to use the "source data for the most recent census data as used in the State fiscal year 2015" to calculated the SFY 2016 charity care subsidy. <u>See</u> <u>L.</u> 2015, <u>c.</u> 63, p. 88, approved June 26, 2015. Accordingly, in SFY 2016, the Department used the same data used to calculate the SFY 2015 charity care subsidy allocations. Applying the formula, the Department determined that the City of Passaic, where the Hospital is located, was not among the ten municipalities with the lowest incomes. The Department allocated approximately $4.4 million to the Hospital for its SFY

2016 charity care subsidy.  The Hospital pursued an administrative appeal, as permitted by N.J.A.C. 10:52-13.4(a).

In its administrative appeal, the Hospital asserted that the Department failed to use "the most recent census data" in the form of the 2010 five-year American Community Survey (ACS) census report.  The Hospital argued it was deprived its proper charity care subsidy allocation for SFY 2016 as a result.

In its November 6, 2015 decision denying the appeal, the Department reasoned that its use of the 2000 decennial census data was proper because N.J.S.A. 26:2H-18.59i(b)(3) must be read together with the Appropriations Act to effectuate legislative intent in calculating the SFY 2016 charity care subsidies. According to the Department, "the Appropriations Act modified the provisions of N.J.S.A. 26:2H-18.59i(b)(3)" in defining the term "most recent census data."  The Appropriations Act provides:

> Notwithstanding the provisions of section 3 of P.L. 2004, c. 113 (C.26:2H-18.59i) or any law or regulation to the contrary, the appropriation for Health Care Subsidy Fund Payments is subject to the following condition:  the distribution of Charity Care funding shall be calculated using source data for the most recent census data as used in State fiscal year 2015.
>
> [L. 2015, c. 63, p. 88, approved June 26, 2015.]

In accordance with the above provision, the Department used the same data used in SFY 2015 to calculate the SFY 2016 charity care allocations.[2]

On this appeal, the Hospital once again alleges that the Department failed to use annual household income data collected and reported by the United States Census Bureau (Bureau) through the ACS. The Hospital contends that, by using the 2000 census data, the Department deprived it of an enhanced charity care subsidy for SFY 2016 resulting in a loss of $1.4 million.

A brief review of the Appropriations Act addressing the calculation of charity care subsidies is instructive. For SFY 2015, the Legislature changed the formula for calculating charity care subsidies. The changed formula eliminated enhanced charity care subsidies for hospitals in the State's lowest income municipalities but still relied on census data from calendar years 2010 through 2014. See L. 2014, c. 14.

In SFY 2016, the Legislature returned to the original formula for calculating charity care subsidies. However, the Legislature specified that the SFY 2016 calculation was subject to a specific condition. That condition required "the distribution of Charity

_____

[2] While census data was not used to calculate charity care in SFY 2015, the Department used historical information from the 2000 census data to calculate charity care subsidies from SFY 2010 through SFY 2015.

Care funding . . . be calculated using source data for the most recent census data as used in State fiscal year 2015." <u>L.</u> 2015, <u>c.</u> 63, p. 88, approved June 26, 2015.

The Hospital contends that the Department should have used the ACS data as the "most recent census data" for calculating SFY 2016 charity care subsidies. According to the Hospital, if the Department used the ACS five-year estimates for 2010 in allocating the 2016 SFY charity care subsidies, Passaic would have ranked seventh poorest in the State, based upon median annual household income, and would have received an enhanced charity care subsidy.

Our review of appeals from administrative agency determinations is limited to three inquires:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [<u>In re Herrmann</u>, 192 <u>N.J.</u> 19, 28 (2007) (quoting <u>Mazza v. Bd. of Trustees</u>, 143 <u>N.J.</u> 22, 25 (1995)).]

If the three inquiries are met, the agency decision is not arbitrary, capricious or unreasonable and we "owe substantial deference to the agency's expertise and superior knowledge of a

particular field." Ibid. (citations omitted). The strong presumption accorded to an agency's action is "even greater" when the challenged action involves "specialized and technical matters" within an agency's expertise. Ibid. We also owe some deference to an agency's reasonable interpretation of its enabling statues. See New Jersey Tpk. Authority v. AFSCME Council 73, 150 N.J., 331, 351 (1997).

The Department correctly calculated the SFY 2016 charity care subsidies using "the most recent census data as used in State fiscal year 2015." Contrary to the Hospital's argument, while the Department did not calculate an enhanced charity care subsidy in SFY 2015, the charity care subsidies that it calculated for that year incorporated the past years' charity care allocations (SFY 2010, SFY 2011, SFY 2012, SFY 2013, SFY 2014) which were based, in part, on the 2000 decennial census data. The Department complied with the language of the SFY 2016 Appropriations Act by using the 2000 decennial census data as the most recent census data. The Department historically relied upon the 2000 decennial census data to calculate charity care subsidies and did so for SFY 2010 through SFY 2015. The Legislature intended that the Department continue to use that data for calculating the SFY 2016 charity care subsidies according to the express language of the statute. See Finkel v. Twp. Comm. of Twp. of Hopewell, 434 N.J.

Super. 303, 319 (App. Div. 2013)(reviewing court should give effect to every word of a statute rather than render a part of the statute superfluous); see also In re Attorney General's "Directive on Exit Polling: Media & Non-Partisan Public Interest Groups", 200 N.J. 283, 297-98 (2009)(citation omitted)(reviewing court "must presume that every word in a statute has meaning and is not mere surplusage and . . . must give those words effect and not render them a nullity.").

The Hospital argues that the Department and the Legislature now use the ACS five-year estimate as the "most recent census data" for calculating charity care subsidies. However, that argument is based on an Appropriations Act adopted in 2016, in which the Legislature required use of the 2013 ACS five-year estimate to calculate the SFY 2017 charity care subsidy. We agree with the Department that the agency is not free to select any ACS five-year estimate for its charity care subsidy calculation. Rather, the Department must follow the Legislature's direction as to the use of a specific ACS five-year estimate. In this case, the Legislature instructed the Department to use the 2013 ACS five-year estimate to calculate the SFY 2017 charity care subsidies. See L. 2016, c. 10, p. 92. It did not issue a similar instruction for the SFY 2016 subsidy.

The Hospital presents a policy argument that the use of outdated census data unfairly limits charity care subsidies to hospitals in the municipalities with the lowest incomes, precluding residents in those municipalities from receiving access to free or discounted hospital care. However, the Legislature implements policy through its passage of statutes. As a court, we cannot make legislative policy. See Gately v. Hamilton Memorial Home, Inc., 442 N.J. Super. 542, 559 (App. Div. 2015)("we defer to the democratic authority of the Legislature, as well as the administrative expertise of the [Department], to consider the wisdom of amending the statutes and regulations . . . .") See also Lourdes Medical Center of Burlington County v. Bd. of Review, 197 N.J. 339, 366 (2009)("We cannot interfere with the policy choices made by the Legislature. If the Legislature wishes to enact a different standard . . . it is free to do so.")(citation omitted).

We are required to interpret legislative intent from the unambiguous language of the statute. DiProspero v. Penn, 183 N.J. 477, 492 (2005). In 2016, the Department was required to apply the most recent census data containing median annual household income to calculate charity care subsidies as was used to calculate the SFY 2015 charity care subsidies. Because the Department used 2000 decennial census data for calculating SFY 2010, SFY 2011, SFY

A-1666-15T2

2012, SFY 2013 and SFY 2014 charity care subsidies, the Department used that historical data to calculate SFY 2015 charity care subsidies. Since it used 2000 decennial census data historically to calculate charity care for SFY 2010 through SFY 2015, the Department properly used the 2000 census data to calculate the SFY 2016 charity care subsidies.

The Hospital contends it was "legislative oversight" to refer to "the most recent census data as used in State fiscal year 2015" for calculation of the SFY 2016 charity care subsidies. We cannot agree. The Legislature clearly expressed its intent to return to the previous formula for calculating charity care subsidies, and specifically conditioned the return to that formula on "recent census data as used in State fiscal year 2015."

In light of the foregoing, the Department's determination was not arbitrary, capricious or unreasonable, because it was based on a reasonable interpretation of its enabling legislation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1666-15T2