**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2277-16T4

IN THE MATTER OF EDMUND ANSARA,
CITY OF MILLVILLE, DEPARTMENT
OF PUBLIC SAFETY.

_____

Argued April 25, 2018 — Decided August 31, 2018

Before Judges Fuentes, Koblitz and Manahan.

On appeal from the New Jersey Civil Service
Commission, Docket Nos. 2016-4183 and 2016-
4255.

Michael J. Confusione argued the cause for
appellant Edmund Ansara (Hegge & Confusione,
LLC, attorneys; Michael J. Confusione, of
counsel and on the brief).

Stephen D. Barse argued the cause for
respondent City of Millville (Gruccio, Pepper,
De Santo & Ruth, PA, attorneys; Stephen D.
Barse, on the brief).

Gurbir S. Grewal, Attorney General, attorney
for respondent Civil Service Commission
(Pamela N. Ullman, Deputy Attorney General,
on the statement in lieu of brief).

PER CURIAM

Appellant Edmund Ansara was a police officer in the City of

Millville Police Department. He appeals from the Final

Administrative Action (FAA) of the Civil Service Commission (Commission) issued December 21, 2016, that upheld the action taken by the appointing authority, City of Millville, terminating his employment based on two removals effective April 26, 2016 and May 26, 2016. The Commission based its decision on an independent evaluation of the record developed before an Administrative Law Judge (ALJ). The Commission thereafter accepted and adopted the Initial Decision of the ALJ which found sufficient evidence to sustain the disciplinary charges filed against appellant related to two separate incidents of misconduct on September 22, 2014, and October 11, 2014.

Appellant urges this court to reverse the Commission's decision. He argues the findings made by the ALJ were not supported by substantial credible evidence. He also claims the City of Millville did not demonstrate good cause to impose the ultimate disciplinary sanction of removal. After reviewing the appellate record, we conclude there is no legal basis to disturb the Commission's decision and affirm.

I

A

On September 22, 2014, the Millville Police Department received a call alleging domestic violence. For reasons not disclosed in the record, the dispatcher "held the call for eighteen

minutes" before directing appellant and Officer Catherine Shipley to respond to the call for assistance involving a possible domestic violence incident at a private residence. The incident arose from a verbal argument between C.G. and his girlfriend, M.M.[1] The dispute had ended by the time appellant and Officer Shipley arrived at the residence. The occupants, a man and two women, all expressed their dissatisfaction about the length of time it took for the officers to respond.

In the hearing before the ALJ, Officer Shipley testified that M.M. "was sitting on the stairs" and appeared "[t]hat she had been crying." C.G. told the officers "that he could have killed [the two women] by the time it took [the officers] to get there." Officer Shipley testified that C.G. was uncooperative and refused the officers' request to produce identification. However, Officer Shipley also made clear that none of the occupants threatened her or appellant verbally or at any time intimated the use of physical force against the officers or each other.

At the hearing before the ALJ, C.G. testified that when appellant asked him to produce identification, he told him that his identification card was in his truck. He then sat on the couch and began searching through his cellphone for a digital copy

---

[1] Because this incident involved domestic violence, we use initials to protect the privacy of the people involved. R. 1:38-3(c)(12).

of his identification.  C.G. conceded that he did not explain to the officers what he was doing with his cellphone.  At this point, appellant crossed the living room and moved closer to C.G.  At the time, C.G. did not have anything other than his cellphone in his hands; Officer Shipley testified she was not concerned that C.G. possessed a weapon.

When C.G. stood up, appellant moved toward him and placed him in handcuffs.[2]  According to Officer Shipley, it was unclear to her why appellant decided to handcuff C.G.  However, she assisted appellant in detaining him because C.G. was not initially compliant.  The two officers brought C.G. to the floor to subdue him while they handcuffed him.  Appellant escorted C.G. in handcuffs to the front lawn of the residence near the police patrol car.  Appellant kept C.G. handcuffed for approximately ten minutes.  Appellant finally removed the handcuffs to permit C.G. to retrieve his identification credentials from his car that was parked in front of the residence.

Appellant asked Officer Shipley to charge C.G. with a disorderly persons offense.  She refused.  Appellant then charged C.G. with committing a disorderly persons offense.  C.G. did not

---

[2] According to C.G., appellant "lunged from the front door . . . [s]lamming handcuffs onto my right wrist.  Breaking my phone in the interim[, he s]lamm[ed] me to the floor."

become aware that he had been charged with this offense until he received in the mail the summons to appear in municipal court. Officer Shipley believed something "wasn't right" with the way appellant acted that day, and reported the incident to Sergeant Duffield. Officer Shipley did not believe C.G.'s conduct presented a physical threat to herself or appellant and testified that appellant erred in placing him in handcuffs.

Detective William Loteck was an investigator in the Internal Affairs Division. In his testimony before the ALJ, Detective Loteck characterized appellant's police report describing what occurred on September 22, 2014, as "not factual. Specifically that C.G. was . . . asked several times for his I.D. That it appeared C.G. pushed Officer Shipley's left arm. [Appellant] also stated that C.G. was taken to his knees to be handcuffed." (emphasis added).

On September 29, 2014, C.G. and M.M. filed an Internal Affairs complaint against appellant for excessive use of force and false arrest. Millville Chief of Police Jody Farabella and Internal Affairs Detective Brian Starcher also testified before the ALJ concerning this incident.

<u>B</u>

At approximately 3:22 p.m. on October 11, 2014, appellant responded to a private residence in the City of Millville. Upon

his arrival, appellant was met by C.W., a civilian dispatcher in the Millville Police Department, and his nephew R.W. C.W. was present during this entire incident. In the police report of the incident, appellant wrote:

> [R.W.] said he has lived here for more than three years. [R.W.] said he has a key for the bottom lock, which is different than the deadbolt, which they never used, but [T.H.] is now using it. [R.W.] said the front door lock is different, as this residence used to be two apartments.

Appellant was unable to unlock the back door with the key. Appellant did not take any action to confirm R.W. actually resided at the house, such as asking him to produce his driver's license or any other documentation showing proof of residence. Ironically, if he had asked R.W. to produce his driver's license, appellant would have discovered R.W. resided with his mother in a different municipality.

Despite not having any competent evidence to corroborate R.W.'s allegations, appellant told R.W. that he "cannot stop [R.W.] from entering his residence." According to appellant's police report, R.W.

> then text messaged [T.H.] that he was going to break out a window to enter the house. She immediately called [R.W.].
>
> [T.H.] said she was not going to let [R.W.] get anything until he gives her the DJ equipment in his possession because it is

6

hers.  [Appellant] requested she get his clothes for work but she continued to yell that she bought everything, nothing is his, and he does not live there.

Despite the obvious civil character of this dispute, appellant stood by while R.W. "made entry by <u>breaking a glass part of the back door and unlocked the dead bolt</u>."  (Emphasis added).  Against the expressed wishes of the person in possession of the residence, T.H., appellant followed R.W. into the residence and watched while R.W. entered the bathroom and "began to collect articles of clothing scattered on the room floor."  T.H., described by appellant as a "female [T.H.], came downstairs yelling while holding an infant in her arms."

According to appellant, T.H. "immediately got in my face . . . ."  Appellant handcuffed T.H. in her kitchen and arrested her.  At the hearing before the ALJ, appellant was asked: "And can you explain to me . . . what action [T.H.] was doing to make you arrest her?"  Appellant responded: "She was -- had her fingers very close to my face."  Appellant admitted that he pushed T.H.'s head against the counter while he arrested her for the disorderly persons offense of resisting arrest, N.J.S.A. 2C:29-2(a).  Appellant placed T.H. in the rear of his patrol car, handcuffed.

While T.H. was inside appellant's patrol car, Sergeant Duffield arrived at the scene.  According to appellant's police

report, Sergeant Duffield attempted to speak to T.H. but she did not respond. Internal Affairs Sergeant Starcher investigated the incident. He viewed the video recording of the incident taken by the video camera in appellant's patrol car. Sergeant Starcher testified that the video recording shows that Sergeant Duffield never attempted to speak with T.H. While T.H. was detained in the patrol car, appellant reentered the residence several times to obtain some of R.W.'s clothing. T.H. told appellant that R.W. had her DJ equipment in his car. Appellant told her that he could not help her retrieve the equipment; she would have to pursue the matter through the Sheriff's Office.

T.H. filed an internal affairs complaint against appellant. Internal Affairs Investigator Sergeant Starcher discussed the matter with appellant's supervisor, Lieutenant Ed Zadroga. Sergeant Starcher was concerned about "a possible pattern" involving Fourth Amendment violations by appellant. Sergeant Starcher decided not to interview T.H., and referred the matter to the Cumberland County Prosecutor's Office based on inconsistencies he discovered in appellant's police report. T.H. pled guilty to resisting arrest before the Millville Municipal Court.

Our review of a final decision of a State administrative agency is limited. <u>Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Envtl. Prot.</u>, 191 N.J. 38, 48 (2007). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." <u>In re Herrmann</u>, 192 N.J. 19, 27-28 (2007). This court accords the agency's decision substantial deference "even if [it] would have reached a different result in the first instance." <u>Id.</u> at 28. "The burden of demonstrating that the agency's action was arbitrary, capricious, or unreasonable rests upon the person challenging the administrative action." <u>In re Arenas</u>, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

To determine whether reversal of the agency determination is warranted, we must consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

> [Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)
> (citing Campbell v. Dep't of Civil Serv., 39
> N.J. 556, 562 (1963)).]

This deferential standard also applies to decisions relating to employee discipline and punishment, including termination. Herrmann, 192 N.J. at 28; see also In re Carter, 191 N.J. 474, 486 (2007).

The record developed before the ALJ is replete with competent evidence of appellant's unfitness to be a police officer. Appellant's conduct in both incidents reflects a disregard for the rule of law coupled with a disturbing pattern of abusive behavior in the exercise of his authority. The arguments attacking the validity of the Commission's decision lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D).

We affirm substantially for the reasons expressed by the Commission, as reflected in the ALJ's Initial Decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2277-16T4