NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the
 internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1602-17T3

BRIAN BUGGÉ,

 Petitioner-Appellant,

v.

NEW JERSEY STATE POLICE,

 Respondent-Respondent.
______________________________

 Submitted October 22, 2018 – Decided November 15, 2018

 Before Judges Fasciale and Gooden Brown.

 On appeal from the Division of the New Jersey State
 Police.

 Brian Buggé, appellant pro se.

 Gurbir S. Grewal, Attorney General, attorney for
 respondent (Melissa H. Raksa, Assistant Attorney
 General, of counsel; Suzanne M. Davies, Deputy
 Attorney General, on the brief).

PER CURIAM
 Petitioner Brian Buggé appeals from the October 30, 2017 final agency

decision of the Superintendent of the New Jersey State Police (NJSP). The

Superintendent adopted the initial decision of the Administrative Law Judge

(ALJ), affirming the NJSP's denial of Buggé's application for a security officer

certification, pursuant to the Security Officer Registration Act (SORA), N.J.S.A.

45:19A-4. We affirm.

 Pursuant to N.J.S.A. 45:19A-4(a), no person shall "be employed as, or

perform the functions and activities of, a security officer unless that person is

registered with the superintendent [of the NJSP]." Pursuant to N.J.S.A. 45:19A-

4(b), "[a]n application for registration as a security officer shall be filed with the

superintendent on a form and in a manner prescribed by the superintendent and

shall set forth under oath," among other things, "that the applicant has not been

convicted of any disqualifying crime or offense as set forth in subsection (c) of

this section."

 Under subsection (c):

 No person shall be issued a certificate of registration as
 a security officer . . . if the person has been convicted
 . . . of: a crime of the first, second, third or fourth
 degree; any offense involving the unlawful use,
 possession or sale of a controlled dangerous substance
 as defined in N.J.S.[A.] 2C:35-2; or any offense where
 the registration of the individual would be contrary to
 the public interest, as determined by the superintendent.

 A-1602-17T3
 2
 [N.J.S.A. 45:19A-4(c).]

 On April 19, 2016, Buggé applied for a security officer certification. After

an investigation, on May 18, 2016, the NJSP denied the application, finding that,

pursuant to N.J.S.A. 45:19A-4(c), Buggé's March 11, 1999 conviction by way

of a guilty plea for a general violation of civil service law in the State of New

York, a misdemeanor offense, disqualified him from obtaining a security officer

certification. The NJSP determined that the New York conviction was

equivalent to a fourth-degree crime in New Jersey. Buggé contested the denial,

and the matter was transmitted to the Office of Administrative Law for a hearing.

N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13.

 On August 4, 2017, the ALJ granted the parties' joint application for

summary decision, N.J.A.C. 1:1-12.5, and issued an initial decision affirming

the denial. The ALJ accepted as undisputed facts "that, in 2001, the NJSP had

disqualified [Buggé] from employment with Kroll Associates based upon the

same [1999 New York] conviction." Kroll Associates held a license under the

Private Detective Act of 1939, N.J.S.A. 45:19-8 to -27, pursuant to which it was

prohibited from employing a person convicted of certain offenses specified in

 A-1602-17T3
 3
N.J.S.A. 45:19-16.1 However, upon Buggé's appeal, the NJSP reversed its

determination and allowed Buggé to continue his employment with Kroll

Associates as an unarmed security guard.

 The ALJ also acknowledged Buggé's certificate of relief from disabilities

issued by the State of New York on November 12, 2002. The certificate relieved

Buggé "of all disabilities and bars to employment, excluding the right . . . to be

eligible for public office," arising from the 1999 New York conviction. Further,

the ALJ acknowledged Buggé's receipt of a private investigator license in the

State of New York in 2000, as well as his work history in law enforcement, and

numerous commendations. Buggé's work history included working for the

United States Secret Service while in college, New York City as a corrections

officer for six-and-one-half years, and Suffolk County as a member of their

police department for approximately twenty years.

 The ALJ considered Buggé's argument that both New Jersey and Federal

courts have consistently interpreted a crime of the fourth-degree in New Jersey

as equivalent to a felony, rather than a misdemeanor, based on the sentencing

exposure. Thus, according to Buggé, because he was not convicted of a felony

1
 N.J.S.A. 45:19-16 prohibits a licensed employer from employing "any person
who has been convicted of a high misdemeanor or . . . [designated]
misdemeanors, or offenses," none of which applied to Buggé.
 A-1602-17T3
 4
in New York, he was not convicted of a fourth-degree crime for purposes of

SORA, and was not subject to disqualification. Buggé argued further that

N.J.S.A. 45:19A-4(c) does not expressly address convictions of comparable

offenses in other states. Buggé also relied on his ability to obtain firearms carry

licenses and private investigator certifications in other states, and maintain

various positions in law enforcement to support his arguments.

 In rejecting Buggé's arguments, the ALJ concluded that "although the

statute does not expressly provide for 'equivalent' offenses in other states, [he

was] persuaded that the crime for which [Buggé] was convicted [was] sufficient

to meet the standard established by New Jersey's regulatory scheme." Thus, the

ALJ "concur[red] with the NJSP's determination that it [was] in the public

interest to deny this application."

 Buggé filed exceptions to the ALJ's initial decision with the

Superintendent. In his final agency decision adopting the ALJ's decision, the

Superintendent explained:

 Notwithstanding Mr. Buggé's argument, his conviction
 in New York, for a General Violation of Civil Service
 Law, equates to a criminal violation of the fourth[-
 ]degree pursuant to New Jersey law. Specifically,
 N.J.S.A. 11A:10-2, which provides:

 Any person who purposely or knowingly
 violates or conspires to violate any

 A-1602-17T3
 5
 provision of this title (Civil Service) or
 Civil Service Commission order shall be
 guilty of a crime of the fourth degree.

 The New Jersey Civil Service law and
 regulations apply to a variety of circumstances,
 including the administration and security of
 examinations. [See, e.g.,] N.J.S.A. 11A:4-1; N.J.A.C.
 4A:4-2.10. Mr. Buggé's conviction related to a
 preparatory class that he taught to police candidates. In
 particular, the material that Mr. Buggé provided to the
 class in preparation for the examination. Therefore, in
 light of this statutory equivalency, the prohibition to
 obtaining a Security Officer Certification for a
 conviction of a fourth[-]degree crime, set out in
 N.J.S.A. 45:19A-4(c), is applicable to this matter.

 The Superintendent also rejected Buggé's argument that a recently enacted

New York law, N.Y. Crim. Proc. Law § 160.59, permitting the sealing of certain

criminal convictions, dictated a different outcome. According to the

Superintendent, "the statute provides that the sealed records remain available to

'qualified agencies,'" such as NJSP, "'acting within the scope of their law

enforcement duties.'" This appeal followed.

 On appeal, Buggé renews the arguments presented to the ALJ and the

Superintendent, contending that the denial of his application based on his 1999

New York conviction was "arbitrary, capricious and unreasonable." We

disagree.

 A-1602-17T3
 6
 We set out the well-known guideposts for our review of the

Superintendent's final agency decision. "Appellate courts have 'a limited role'

in the review of such decisions." In re Stallworth, 208 N.J. 182, 194 (2011)

(quoting Henry v. Rahway St. Prison, 81 N.J. 571, 579 (1980)). "[W]e do not

ordinarily overturn such a decision 'in the absence of a showing that it was

arbitrary, capricious or unreasonable, or that it lacked fair support in the

evidence.'" In re Carter, 191 N.J. 474, 482 (2007) (quoting Campbell v. Dep't

of Civ. Serv., 39 N.J. 556, 562 (1963)).

 Indeed,

 the judicial role is generally restricted to three
 inquiries: (1) whether the agency's action violates
 express or implied legislative policies, that is, did the
 agency follow the law; (2) whether the record contains
 substantial evidence to support the findings on which
 the agency based its action; and (3) whether in applying
 the legislative policies to the facts, the agency clearly
 erred in reaching a conclusion that could not reasonably
 have been made on a showing of the relevant factors.

 [Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).]

 "When an agency's decision meets those criteria, then a court owes

substantial deference to the agency's expertise and superior knowledge of a

particular field." In re Herrmann, 192 N.J. 19, 28 (2007). "[I]f substantial

evidence supports the agency's decision, 'a court may not substitute its own

 A-1602-17T3
 7
judgment for the agency's even though the court might have reached a different

result.'" Carter, 191 N.J. at 483 (quoting Greenwood v. St. Police Training Ctr.,

127 N.J. 500, 513 (1992)). However, we are "in no way bound by the agency's

interpretation of a statute or its determination of a strictly legal issue." Ibid.

(quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

 Guided by these principles, we cannot conclude that the Superintendent's

decision disqualifying Buggé under N.J.S.A. 45:19A-4(c), based on his 1999

New York conviction for a misdemeanor offense, was "arbitrary, capricious or

unreasonable, or that it lacked fair support in the evidence." Carter, 191 N.J. at

482. We conclude that Buggé's contrary arguments are without sufficient merit

to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), and we affirm

substantially for the reasons expressed in the Superintendent's comprehensive

written decision. R. 2:11-3(e)(1)(D).

 Affirmed.

 A-1602-17T3
 8