**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1173-18T3

MICHAEL NAPPE,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF
THE TEACHERS' PENSION
AND ANNUITY FUND,

      Respondent-Respondent.

_____

> Argued November 18, 2019 – Decided December 31, 2019
>
> Before Judges Fasciale, Rothstadt and Mitterhoff.
>
> On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury, TPAF No. 1-593161.
>
> Samuel Benjamin Wenocur argued the cause for appellant (Oxfeld Cohen, PC, attorneys; Samuel Benjamin Wenocur, of counsel and on the briefs).
>
> Juliana C. DeAngelis, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Juliana C. DeAngelis, on the brief).

PER CURIAM

Michael Nappe appeals from an October 10, 2018 final administrative determination of the Board of Trustees of the Teachers' Pension and Annuity Fund (TPAF Board) denying his request to apply for accidental disability retirement benefits. Before applying for these benefits, Nappe irrevocably resigned from his employment with the Board of Education of the City of Linden (Linden Board), pursuant to a settlement agreement. The Division of Pension and Benefits (DPB) closed Nappe's benefits application, reasoning that his irrevocable resignation prevented him from complying with N.J.S.A. 18A:66-40(a), which permits the retirement system to compel a beneficiary under sixty years of age to undergo a medical examination to determine whether the beneficiary remains disabled. The DPB also cited to N.J.A.C. 17:1-6.4, which requires an applicant to prove that their employment ended "due to a total and permanent disability." The TPAF Board affirmed the DPB's decision.

On appeals, Nappe argues that N.J.S.A. 18A:66-40(a) does not apply to him because he was sixty-six years old when he applied for disability retirement benefits. He further argues that the TPAF Board erred in its application of N.J.A.C. 17:1-6.4 because it failed to determine whether the settlement

agreement ending Nappe's employment was due to his disability. Having reviewed the record, and in light of the applicable law, we vacate the denial of Nappe's request to apply for accidental disability retirement benefits and remand for further proceedings.

In October 2014, while teaching in the Linden School District (District), Nappe requested accommodations under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 to 12213, due to his physical disability of diabetes. One of his requests was for remote control software. Three years earlier, the District had provided Nappe with a software program called LanSchool, which served as a reasonable accommodation for this request. At a later time, the District removed LanSchool from its classrooms and "offered alternate accommodations to assist [Nappe] in monitoring [his] students[.]" Nappe was unhappy with this change. Thereafter, he complained that the change violated his right to accommodations under the ADA.

In September 2015, Nappe emailed his supervisor Michael Walters, accusing him of discrimination and alleging that another employee discriminated against him during a performance review by including a comment about a teaching deficiency, which was caused by his physical disability. The District's affirmative action officer began to investigate. Thereafter, Nappe filed

3

a complaint with the Division of Civil Rights (DCR), alleging discrimination and retaliation based on his physical disability. After the District completed its investigation, the superintendent sent a letter to Nappe to inform him that his discrimination claims lacked merit.

During the following months, the professional relationship between Nappe and Walters deteriorated, and on March 8, 2017, an altercation occurred. Walters was angry with Nappe because Nappe was behind on a project, and another employee was asked to help out while Nappe was in a meeting. After Nappe's meeting concluded, he ran into Walters, and the two got into a heated argument. Walters "[stood] directly in front of him, entering his personal space, while he engaged in a verbal altercation." Minutes later, Walters grabbed a chair and shoved it into a table in Nappe's direction. Other employees were present, but none reacted. Nappe and Walters left the room separately, without further argument. Later that day, Nappe emailed the superintendent to report the incident and explained that he felt threatened and harassed. Nappe also instructed his attorney to update the DCR complaint with details of the incident. Soon after, Nappe began seeing a psychiatrist, with whom he discussed the Walters incident.[1]

---

[1] Nappe was also being treated by a psychologist, beginning in December 2016.

A-1173-18T3

In August 2017, Nappe and the Linden Board entered into an agreement to "settl[e] all outstanding controversies between [them]." The parties agreed that Nappe would

> immediately withdraw any and all pending administrative, contractual, and civil actions that he has filed or has caused or anticipates to be filed against the [Linden] Board or any of its current or former employees arising out of his claims that he was subjected to unlawful discrimination, harassment or retaliation . . . including but not limited to the . . . complaint filed with DCR[.]

He was also required to execute an irrevocable letter of resignation, effective June 30, 2018. The parties further agreed that the Linden Board "[would] not seek to institute any formal disciplinary action against Nappe based upon any allegations or claims which the [Linden] Board knew about or should have known about prior to the execution of the [a]greement." The Linden Board was also required to place Nappe on a paid leave of absence for the 2017-2018 school year due to his medical needs, and it agreed to assist Nappe in applying for retirement benefits:

> The [Linden] Board shall provide Nappe with reasonable assistance in forwarding documents to the [DPB] to facilitate Nappe's retirement[.] The [Linden] Board shall complete the forms needed for Nappe to seek a retirement; however, Nappe acknowledges and understands that the [Linden] Board will take no further action with regard to Nappe's retirement unless

5

required by law. Nappe expressly agrees and understands that his resignation is final and irrevocable no matter what and regardless of whether or not his application for retirement is successful.

On August 17, 2017, Nappe sent the superintendent his irrevocable letter of resignation, which included a statement of his intent to seek retirement benefits from the TPAF.

Nappe applied for accidental disability retirement benefits at the age of sixty-six. In his application, he stated that he suffered from "continued disability" due to a "traumatic event in [the] classroom [involving] threatening and intimidating physical harm by [a] former supervisor." He submitted medical examination forms prepared by his psychiatrist and psychologist. Both had diagnosed Nappe with post-traumatic stress disorder and opined that he was permanently disabled and unable to perform his assigned duties as a direct result of the District's work environment. A few months later, the DPB notified Nappe that it had closed his application, citing to N.J.A.C. 17:1-6.4 and N.J.S.A. 18A:66-40(a). The DPB explained that Nappe could not comply with the statute because he had irrevocably resigned from his employment.

Nappe appealed the DPB's decision to the TPAF Board, claiming that he had complied with N.J.A.C. 17:1-6.4 because his disability was the reason he resigned. He also confirmed, by way of a letter from the Linden Board's

6

attorney, that there were no pending disciplinary charges against him when he resigned and that if he recovered from his disability, the Linden Board had not barred him from applying for future employment with the District. Nappe also argued that N.J.S.A. 18A:66-40(a) was inapplicable because it only applied to beneficiaries under the age of sixty. Upon review of Nappe's appeal, the TPAF Board affirmed the DPB's decision.

Nappe appealed again, largely relying on the same arguments and adding that the TPAF Board failed to address the factual issues concerning the reason that he resigned. The TPAF Board denied his request for an administrative hearing and affirmed its previous decision. It then issued a final administrative determination on October 10, 2018, relying on N.J.S.A. 18A:66-40(a) and N.J.A.C. 17:1-6.4. The TPAF Board reiterated that "Nappe did not leave employment due to a disabling condition." Rather, he left pursuant to a settlement agreement. Consequently, he could not comply with N.J.A.C. 17:1-6.4(b)(2) and (4). It then explained that "[i]f [his] application for disability retirement was approved and his alleged disability diminished to the point that he could return to employment," he would be unable to comply with N.J.S.A. 18A:66-40(a). Citing to In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 402 (App. Div. 2018), the TPAF Board explained that the statute

contemplates that "the only obstacle to a disability retiree's reemployment is the disability itself." This appeal ensued.

On appeal, Nappe argues that the TPAF Board erred in relying on N.J.S.A. 18A:66-40(a) and N.J.A.C. 17:1-6.4. He raises substantially the same arguments as he did before the TPAF Board, contending that N.J.S.A. 18A:66-40(a) does not apply and that the TPAF Board erred in its application of N.J.A.C. 17:1-6.4 because it only relied on the fact that he irrevocably resigned from his employment pursuant to a settlement agreement. He further contends that the TPAF Board should have ordered an administrative hearing to determine whether he and the Linden Board considered his mental disability in negotiating the terms of the settlement agreement. He asserts that the evidence he has presented shows that the parties to the agreement considered his mental disability. Consequently, the TPAF Board would have been compelled to conclude that he complied with N.J.A.C. 17:1-6.4.

We will reverse an administrative agency's decision only if it was arbitrary, capricious, or unreasonable. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)). Our role is limited to considering whether the agency complied with legislative policies, whether the record contains substantial evidence to support

the agency's decision, and whether the agency reached a reasonable conclusion. In re Carter, 191 N.J. 474, 482-83 (2007) (citing Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995)). We "defer to an agency's expertise and superior knowledge of a particular field," so we will "not substitute [our] own judgment for the agency's even though [we] might have reached a different result." Id. at 483 (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). However, we are not bound by an agency's statutory interpretation. Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

An applicant for disability retirement benefits must show that he or she retired "due to a total and permanent disability that renders the applicant physically or mentally incapacitated from performing normal or assigned job duties at the time the member left employment." N.J.A.C. 17:1-6.4(a); see also In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. at 397 (quoting N.J.A.C. 17:1-6.4(a)). A member cannot apply if their employment ended pursuant to a "[s]ettlement agreement[] reached due to pending administrative or criminal charges, unless the underlying charges relate to the disability." N.J.A.C. 17:1-6.4(b)(2). Likewise, a member who "voluntar[ily] separat[ed] from service for reasons other than a disability" cannot apply. N.J.A.C. 17:1-6.4(b)(4). "[D]isability retirement benefits are intended for members who become disabled

while in active service and can no longer work[.]" In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. at 398 (quoting 48 N.J.R. 1306(a) (June 20, 2016)).

The TPAF Board is responsible for administering disability retirement benefits distributed from the TPAF. See N.J.S.A. 18A:66-56(a)(1). When a retiree is approved for such benefits, the TPAF Board monitors certain retirees to ensure they receive benefits only as long as they remain disabled:

> Once each year the retirement system may . . . require any disability beneficiary who is under the age of [sixty] years to undergo medical examination by a physician or physicians designated by the system for a period of [five] years following his retirement in order to determine whether or not the disability which existed at the time he was retired has vanished or has materially diminished.
>
> . . . .
>
> . . . If the report of the medical board shall show that such beneficiary is able to perform either his former duty or other comparable duty which his former employer is willing to assign to him, the beneficiary shall report for duty; such a beneficiary shall not suffer any loss of benefits while he awaits his restoration to active service.
>
> [N.J.S.A. 18A:66-40(a).]

If a TPAF member disagrees with a TPAF Board determination, he or she may submit a written appeal. N.J.A.C. 17:3-1.7(a)(1). "[T]he [TPAF] Board shall determine whether to grant an administrative hearing based upon the

10

standards for a contested case hearing set forth in the Administrative Procedure Act, N.J.S.A. 52:14B-1 [to -31], and 52:14F-1 [to -23], and the Uniform Administrative Procedure Rules, N.J.A.C. 1:1." N.J.A.C. 17:3-1.7(a)(2). A case is contested when it involves "a proceeding . . . in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders . . . after opportunity for an agency hearing." N.J.S.A. 52:14B-2. If the case "involves a question of facts, the [TPAF] Board shall submit the matter to the Office of Administrative Law." N.J.A.C. 17:3-1.7(a)(5).

We conclude that the TPAF Board erred in relying on N.J.S.A. 18A:66-40(a). We have limited "the [TPAF] Board to a five-year window to assess the totality and the permanency of the disability of retirees under sixty years of age." N.J. Educ. Ass'n v. Bd. of Trs., Pub. Emps.' Ret. Sys., 327 N.J. Super. 326, 333 (App. Div. 2000) (emphasis added). Nappe was sixty-six years old when he applied, so if he were to receive disability retirement benefits, this statute would not apply to him. The TPAF Board could not compel him to undergo a medical examination to determine whether he remained disabled. The fact that Nappe irrevocably resigned from his employment is irrelevant in this regard because,

11

due to his age, he would never be in a position where he was required to return to active service. Accordingly, the TPAF Board erred in concluding that the DPB properly closed Nappe's application on the basis that he could never comply with N.J.S.A. 18A:66-40(a).

In addition, we conclude that the TPAF Board erred in its application of N.J.A.C. 17:1-6.4. A member who resigned from a job for a reason unrelated to a disability cannot apply for disability retirement benefits. N.J.A.C. 17:1-6.4(b)(2) and (4). Through Nappe's efforts to reverse the closing of his application, he provided evidence suggesting that he resigned because of a mental disability. The early issues between Nappe and the Linden Board were certainly related to Nappe's physical disability. However, those issues led to further conflicts in the workplace, specifically the Walters incident, causing Nappe to experience mental distress. While the record is silent as to precisely when Nappe's mental disability arose, the evidence he has provided suggests that it was caused by events occurring before the execution of the settlement agreement. Nappe's psychiatrist and psychologist both opined that his work environment, including the incident with Walters, was detrimental to his health. They further opined that he was "no longer able to perform his . . . assigned job duties." Therefore, it would be reasonable to find that Nappe and the Linden

Board had contemplated Nappe's mental disability when negotiating the terms of the settlement agreement. The language in the agreement certainly indicates that Nappe's leave of absence was for medical reasons and explicitly states that the Linden Board intended to assist Nappe in applying for retirement benefits.

The TPAF Board did not address any of these factual assertions in its legal analysis. Instead, it determined that there were no disputed issues of fact, after deciding that Nappe's resignation pursuant to a settlement agreement completely barred him from applying for disability retirement benefits. However, the evidence that Nappe presented shows that there was a factual dispute as to whether he resigned because of his mental disability. Accordingly, the TPAF Board should have transmitted the case to the Office of Administrative Law for a hearing to resolve this factual dispute.

To the extent we have not specifically addressed any remaining arguments raised by the parties, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1173-18T3