**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1023-22

KIMBERLY LEFTWICH,

    Plaintiff-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

    Respondent-Respondent.

Argued February 26, 2024 – Decided March 20, 2024

Before Judges Sabatino and Chase.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx2940.

Samuel Michael Gaylord argued the cause for appellant (Szaferman Lakind Blumtein & Blader, PC, attorneys; Samuel Michael Gaylord, of counsel and on the brief).

Porter Ross Stickler, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorneys; Sookie Bae-Park, Assistant Attorney General, of counsel; Porter Ross Strickler, on the brief).

PER CURIAM

Kimberly Leftwich appeals the October 25, 2022 final agency decision of the Board of Trustees of the Public Employees' Retirement System ("PERS") that denied her claim for accidental disability retirement benefits under N.J.S.A. 43:15A-46. The PERS Board adopted the September 6, 2022 decision of an administrative law judge ("ALJ"), who rejected appellant's claim on the basis that she had not medically proven her present disabling condition was caused by a work-related injury. As elaborated in this opinion, we vacate and remand the final agency decision because the legal standard of causation was not correctly applied to the evidence presented at trial.

Because we are remanding this matter, we need not comprehensively recount the facts. Appellant, a fifty-six-year-old state employee enrolled in PERS, worked as a senior therapy program assistant at the New Lisbon Development Center. On September 1, 2015, appellant was assaulted by a patient at the facility. The patient struck appellant at least five times in the shoulder and neck and pulled out a substantial amount of her hair. Appellant went to the infirmary and completed her workday.

The following day, appellant, who was in pain, went to a medical facility and was prescribed muscle relaxers and physical therapy. She missed about two

days of work at that point.  Appellant was evaluated by a neurosurgeon and an orthopedic surgeon, both of whom recommended cervical surgery.  However, appellant chose not to have the surgery.

About two months after the patient assault, appellant was involved in an unrelated motor vehicle accident in November 2015, in which her vehicle was rear-ended.  She fractured her ankle in that accident.

Appellant resigned from her job in May 2016.  She sought accidental disability retirement benefits, contending that the September 1, 2015 patient assault had permanently disabled her.  The PERS agency staff denied her claim, and the contested case was referred to the Office of Administrative Law for a hearing before an ALJ.  The hearing took place over two non-consecutive days in February 2021 and May 2021.

The ALJ heard competing expert testimony from a board-certified orthopedic physician called by appellant, and from the State's medical expert, a board-certified orthopedic surgeon.  The ALJ also heard testimony from appellant and considered several medical records admitted into evidence.

Appellant's testifying expert diagnosed her with chronic post-traumatic conditions in her cervical spine and post-traumatic impingement syndrome in her left shoulder.  His findings included disc herniations at three cervical

3

vertebral levels (C4-5, C5-6, and C6-7). The expert recognized appellant had pre-existing degenerative changes in her spine, but noted that they had been asymptomatic before the September 2015 incident. He opined that appellant is permanently and totally disabled as a direct result of the incident.

In contrast, the State's testifying expert concluded that appellant's condition was the produced by pre-existing degenerative changes, as he believed were shown on an MRI, not the work-related incident. The State's expert was unable to corroborate appellant's complaints of radiating pain with an EMG study. He agreed with appellant's expert that she is now totally disabled, but disagrees it was caused by the incident.[1]

In her written decision, the ALJ found the State's medical expert more credible than appellant's expert on the critical subject of causation. The ALJ specifically found that appellant's disability "was not the direct result" of the September 2015 work incident. "Rather [her] disability was caused by a chronic degenerative condition that was observed by both experts in the objective findings." Accordingly, the ALJ concluded that appellant's disability "was not

---

[1] The Board does not dispute appellant's eligibility for "ordinary" disability retirement benefits under N.J.S.A. 43:15A-42. The parties' dispute turns instead on whether she is eligible for more generous "accidental" disability retirement benefits under N.J.S.A. 43:15A-46. See Rooth v. Bd. of Trs., Pub. Emps.' Ret. Sys., 472 N.J. Super. 357, 365 (App. Div. 2022) (explaining this distinction).

A-1023-22

traumatically caused by the work-related incident . . . but rather is the result of pre-existing degenerative conditions."  The Board's one-page decision adopted the ALJ's determinations without commentary.

Appellant contends the ALJ and the Board erred in their assessment of the medical evidence.  Among other things, she principally contends the ALJ did not consider fairly "whether the work accident, despite the degenerative findings, was the substantial cause of her disability." (emphasis added).  She argues the ALJ and the Board erroneously "determined, without any medical support, that [appellant's] condition would have been disabling someday," and therefore her disability was simply caused by an aggravation of a pre-existing condition.

The Board, as respondent, disagrees that the ALJ misstated or misapplied the standards of causation.  It urges we affirm the denial of accidental benefits.

We review this appeal guided by well-established standards.  Generally, an appellate court will sustain an administrative agency's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record."  Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).  "[T]he agency's factual determinations are

presumptively correct" and a court, reviewing the facts, "will not substitute its own judgment over that of an agency where the agency's findings are supported by sufficient credible evidence." Rooth, 472 N.J. Super. at 365.

Even so, that deferential scope of appellate review does not extend to the agency's obligation to apply correct principles of law to the record. We review such questions of law de novo. Manalapan Realty, L.P. v. Twp. of Comm. of Manalapan, 140 N.J. 366, 378 (1995); Bowser v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 165, 170-71 (App. Div. 2018).

The applicable legal requirements for accidental disability retirement benefits are expressed in the governing statute and in case law. By statute, a member of PERS such as appellant becomes eligible for accidental disability retirement benefits "if said employee is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of [their] regular or assigned duties." N.J.S.A. 43:15A-43 (emphasis added).

The meaning of the statutory term "traumatic event" was clarified by the Supreme Court in Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189, 212–13 (2007). The Court instructed that a

member of the pension system must show the following, to be eligible for accidental disability retirement benefits:

> 1. that [the member] is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
>> a. identifiable as to time and place,
>>
>> b. undesigned and unexpected, and
>>
>> c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;
>
> 4. that the disability was not the result of the member's willful negligence; and
>
> 5. that the member is mentally or physically incapacitated from performing [her] usual or any other duty.[2]
>
> [Ibid. (emphasis added).]

Pivotal to this appeal, however, the Supreme Court has also instructed that "the traumatic event need not be the sole or exclusive cause of the disability." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 187 (1980)

---

[2] The only element of this test that is disputed here is item 2.

A-1023-22

overruled on other grounds by Maynard v. Bd. of Trs. Tchrs.' Pension & Annuity Fund, 113 N.J. 169 (1988) (emphasis added). The statutory standard of causation is satisfied so "long as the traumatic event is . . . the essential significant or substantial contributing cause of the disability . . . even though it acts in combination with an underlying physical disease." Ibid. (emphasis added). However, if the traumatic event merely contributed to the progression of the underlying condition by "aggravation," then it is not the "essential significant or substantial contributing cause" of the disability. Id. at 189. The public employee bears the burden of proving causation through competent medical testimony and must produce "such expert evidence as is required to sustain that burden." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 51 (2008); see also Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 428 (2018) (reiterating this burden).

In Petrucelli v. Bd. of Trs., Pub. Emps.' Ret. Sys., 211 N.J. Super. 280, 288-89 (App. Div. 1986), this court upheld an award of accidental disability benefits for an employee whose underlying condition of spondylolisthesis was asymptomatic before he fell down a stairwell at work, and the work injury precipitated pain and symptoms that immobilized him. The claimant's past

medical history was negative for back problems, and he had enjoyed a vigorous lifestyle before the accident.  Id. at 289.

Here, the ALJ distinguished the circumstances in Petrucelli from the present case.  The ALJ noted that, unlike Mr. Petrucelli, appellant did return to work shortly after the accident.  The ALJ further perceived that both testifying experts came to similar diagnoses, i.e., an "aggravation of pre-existing age-related degenerative disc disease and osteoarthritis."  The ALJ also noted that appellant's expert acknowledged that appellant's spine "could [have] disable[d] her over time without any intervening traumatic event, consistent with [her] [non-testifying] treating physicians' opinion that the degenerative condition likely would not have remained asymptomatic."  The ALJ reasoned that "[t]he work incident could not be the substantial cause where, as here, objective findings in the MRIs and x-rays clearly demonstrated a significant pre-existing degenerative condition."  The ALJ cited an unpublished opinion of this court[3] to support that rationale.

With all due respect to the ALJ, this legal reasoning imposes a higher causation burden on appellant than the case law and statute prescribe.  As stated

---

[3]  In compliance with Rule 1:36-3, we do not cite here or rely on that non-precedential unpublished opinion.

in <u>Gerba</u>, the claimant must establish the work-related injury was an "essential significant or substantial contributing cause of the disability." 83 N.J. at 187. That kind of condition suffices, "even though it acts in combination with an underlying physical disease." <u>Ibid.</u>

The ALJ's legal analysis appears to overlook the logical possibility that a pre-existing, asymptomatic condition could have been "significant" or "substantial," and that the work-related injury <u>also</u> could have been "significant" or "substantial." One does not necessarily rule out the other from playing a role in the chain of causation.

The pivotal question is whether the former is sufficiently dominant as a causal agent to such a degree that it subordinates the latter to something that merely "aggravated" a disabling condition. In other words, both the pre-existing condition and the accident, while each being significant or substantial in its own right, sometimes can act "in combination," as recognized in <u>Gerba</u>, and enable the employee to recover accidental disability benefits. The law does not automatically bar every worker who has a substantial or significant pre-existing medical condition (who often tend to be older workers) and who then is severely injured at work from qualifying for accidental disability benefits.

A-1023-22

We appreciate that it can be difficult for testifying medical experts and jurists to tease out from the evidence which causes in a particular case are the most prominent and which ones are of lesser importance. That said, the ALJ's analysis here appears to incorrectly presume that once a pre-existing medical condition is identified as "significant" or "substantial," that precludes a work-related accident from likewise being fairly described with those same adjectives.

If both pre-existing and work-related factors have those features of substantiality or significance, then the Court's formulation in Gerba requires the trier of fact to determine if the work-related cause was "the essential" significant or substantial contributing cause. Id. at 187. Black's Law Dictionary defines the term "essential" as "of, relating to, or involving the essence or intrinsic nature of something; of the utmost importance; basic and necessary." 687 (11th ed. 2019).

The ALJ's causal analysis did not use or explicitly apply the term "essential." Although we might infer such a finding from the fact that the ALJ ruled against appellant and deemed her expert's causation testimony less credible, prudence dictates that we remand the matter to obtain an explicit determination of that case-dispositive concept, and the reasons supporting that determination.

11

Consequently, we vacate the final agency decision, and instruct the matter be remanded to the ALJ through the Board for amplified causation findings in accordance with this opinion. The ALJ shall have the discretion to permit updated medical examinations and evidence if it will reasonably assist in the endeavor. We do not retain jurisdiction and intimate no views on the appropriate post-remand outcome.

Vacated and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1023-22